# MARYLAND REPORTS.

## OCTOBER TERM, A. D., 1879.

### THOMAS B. HAMMOND *vs.* WILLIAM H. STRAUS.

*Acceptance by Corporators (previously incorporated under the General Incorporation Law) of an Act of Incorporation—Construction of the Act of 1874, ch. 118, incorporating the Union Banking Company of Baltimore—Liability of Stock-holders—Submission of questions of Fact to the Jury.*

On the 8th March, 1873, certain parties became incorporated under the Act of 1868, ch. 471, with the corporate name of the "Union Banking Company of Baltimore City." This corporation had for its object, as shown by its articles and certificate of incorporation, the powers and privileges of a savings institution and of a real estate and building association. Its office was in Baltimore City, and its capital stock was limited to $150,000, divided into fifteen thousand shares. It was regularly organized and went into operation. Of the stock of this corporation the appellee became the owner of a certain number of shares on the 29th December, 1873, and a director of the corporation in the following month, and was placed on a committee to examine a charter about to be submitted to the Legislature for new and extended franchises, which charter he recommended as proper and desirable to be obtained. That charter was presented to the Legislature and was passed with some amendments, as the Act of 1874, ch. 118. This Act declared the parties therein named, including the appellee, and their successors in office to be, and they were thereby constituted a body corporate under the name of the "Union Banking Company of Baltimore." The same parties were made directors for the first year, the capital stock was the same as in the first incorporation, with the privilege of increasing it to $500,000. The Act conferred large banking powers, including the power to borrow money, receive it on deposit, pay interest thereon and to loan it, and also the powers of

1                              v. 53.

a trust company. The Act provided that the stockholders and directors of the company should be liable to the amounts of their respective shares of stock in the corporation, for all its debts and liabilities upon note, bill or otherwise. In an action brought by the appellant, a creditor of the corporation, for money deposited with it, against the appellee, an alleged stockholder therein, it was HELD:

1st. That the facts and circumstances in proof in the case required that the question of the acceptance of the Act of incorporation by the corporators therein named, should have been submitted to the jury; and that the fact that the Act had been prepared and submitted to the Legislature by the parties therein named, that the Act contained the grant of large and valuable franchises, that the same parties named in the Act were afterwards found conducting a regular banking business, under a name substantially that authorized by the legislative Act of incorporation with all the external *indicia* of a regularly organized bank of discount and deposit, such as that Act authorized, and when the exercise of such powers would have been illegal and wholly unauthorized under the law, if not derived from the Act of 1874, ch. 118, constituted evidence certainly tending to prove that the Act of incorporation had been accepted, and that the parties were in the actual use of the powers and privileges thereby granted; and that though the appellee on his part offered evidence of a direct character to prove that the Act of incorporation had never been accepted, that there had been no organization under it, and that all the banking business transacted was done under the powers derived from the organization under the general incorporation law, still the question of acceptance was one for the jury; and that upon the acceptance of this Act, the parties named became incorporated by force of the Act itself.

2nd. That although the original subscription may have been made to the stock of the corporation formed under the general law, yet, if the subsequent Act of incorporation was accepted, and by consent and general understanding, the stock subscribed for in the first corporation was allowed to stand and be treated as stock taken in the second corporation, the appellee would be as effectually a stockholder in this corporation as if he had become such by a new subscription, and his receipt of dividends would be evidence of an unequivocal character.

3rd. That if the corporation under the Act of 1874, was really brought into existence, and it was with that corporation the appellant made deposit of his money, then the fact that the certificate of

deposit offered in evidence purported to have been made by the "Union Banking Company of Baltimore City," instead of the "Union Banking Company of Baltimore," could make no manner of difference, in the appellant's right to. recover.

Where there is conflicting evidence as to a question of fact, whatever may be the opinion of the Court as to the value or preponderance of that evidence, the jury must be allowed to consider it and to make their deductions from it.

The Act of 1874, ch. 118, sec. 4, provided that, "when twenty-five *per cent.* of the *minimum* capital stock shall have been paid in, &c., and so certified by a majority of said corporation to the treasurer and comptroller of the State, and a certificate of their organization transmitted to the clerk of the Court of Appeals, to be by him recorded among the records of his, office, and not before, shall they be entitled to all the benefits and privileges herein conveyed or intended to be conveyed." HELD:

That there is nothing in this language that imports a condition precedent to the existence of the corporation, that the acts required to be done could only have been done by the corporators after the Act of incorporation had been accepted, the requisite amount of the capital stock subscribed, and the organization under the Act completed; that the neglect or omission of the corporators to observe the requirements of the law in this respect, could not be set up either by the corporation or its stockholders as a defence to an action to enforce their liabilities.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*Exception.*—It is not necessary to set out the prayers offered by the plaintiff at the trial: the instructions given by the Court below (DOBBIN, J.,) are contained in the opinion.

The cause was argued before BARTOL, C. J., MILLER, ALVEY and ROBINSON, J.

*Charles E. Phelps* and *A. W. Machen*, for the appellant.

The appellant submits, that the Court below erred in taking the case from the jury, and directing a verdict for the defendant: Because the testimony showed a clear case of estoppel by conduct on the part of the defendant to deny the acceptance by the corporation styled the "Union Banking Company of Baltimore City," of the Act incorporating the "Union Banking Company of Baltimore." *Hagar vs. Cleveland,* 36 *Md.,* 476, 491; *Slocum vs. Warren,* 10 *R. I.,* 116; *State vs. Simonton,* 78 *N. C.,* 57; *Eaton vs. Aspinwall,* 19 *N. Y.,* 119; *Doubleday vs. Muskett,* 7 *Bing.,* 110; *McDougald vs. Lane,* 18 *Ga.,* 444, 452; *McHose vs. Wheeler,* 45 *Pa.,* 32; *McCarthy vs. Levashe,* 10 *Chi. L. N.,* 342, cited in *Thompson's Liab. of Stock, section* 415; 2 *Smith's Lead. Cases,* (7th *Ed.,*) 718 *to* 720, *note; Law Rep.,* 7 *Ch. Div.,* 533; 3 *App. Cas.,* 1002, 1026; *Corwith vs. Culver,* 69 *Illinois,* 502; *Wallace vs. Loomis,* 7 *Otto,* 146, 154, 155; *San Antonio vs. Mehaffy,* 6 *Otto,* 314, 315; *Dooley vs. Cheshire Glass Co.,* 15 *Gray,* 494; *Hull Flax Co. vs. Wellesley,* 6 *Hurlstone & Norman,* 53; *Tyerman vs. Smith,* 6 *Ellis & Black,* 719; *Foster vs. Bank of England,* 8 *Q. B.,* 689, PATTERSON, WILLIAMS and WIGHTMAN, JJ.; *Sheffield Railway Co. vs. Woodcock,* 5 *Mees. & Welsby,* 574.

Was then the credit given by the plaintiff to the company in this case given presumably upon the faith of the Act of 1874, chapter 118?

Had the defendant, before the plaintiff made his deposit, given his express personal assurance as a director, that the company was doing business under the Act as its charter, he would be clearly estopped beyond all doubt or question.

But the whole line of conduct of the defendant and his associates, was a standing, implied assurance, as strong as any express one could possibly be. They could easily have avoided this consequence by simply notifying the public and their customers that they had purposely non-

Hammond *vs.* Straus.

complied with the requirements of the 4th section of the
Act, in order to escape the liabilities of the 14th section.
This they did not do, because it would have prevented 12
per cent. dividend.   For the sake of the profit, they were
willing to have the public reputation of individual lia-
bility.   He who shared in that profit cannot now be heard
to say that the public was deceived, and deceived by him.
He who is silent when he ought to have spoken, shall not
be heard when he ought to be silent.   *Morgan vs. R. R.
Co.*, 96 *U. S.*, 720.

As to the acceptance of dividends, see *Moale vs. Buch-
anan*, 11 *G. & J.*, 326; *Lanahan vs. Latrobe*, 7 *Md.*, 272;
*Edes vs. Garey*, 46 *Md.*, 41.

Certainly the public had a right to presume the com-
pany was doing a legitimate business.   Now, a legitimate
banking business the company could only do under the
Act.   For it is to be observed, that they never pretended
to do a banking business as a *partnership*, but from the
first as a *corporation*.   While persons dealing with corpo-
rations are required, at their peril, to know the provi-
sions of their charter, there is no law which requires
them to know all matters *in pais*.   In all such matters,
the business public must act upon *appearances*, upon the
face of things as they notoriously exist.   If anybody is
deceived by such appearances, the loss should fall upon
those who have held out those appearances.   *State vs.
Simonton*, 78 *N. C.*, 57, 62.

There was *some* evidence of an actual acceptance of the
legislative charter, and the question could not rightly be
taken entirely away from the jury.   That at the close of
the plaintiff's testimony, he had a *prima facie* case, was
recognized when the defendant proceeded to offer testi-
mony to meet it.   If at that stage there was a question
which must have been submitted to the jury, had the trial
stopped there, the Court went beyond its province, as we
respectfully submit, when it assumed, afterwards, to pass

upon the weight and sufficiency of the defendant's proof, and upon all the evidence, to decide the question of fact in issue, and declare that the plaintiff's *prima facie* case was overcome.

*H. L. Boulden, Bradley T. Johnson* and *E. Otis Hinkley,* for the appellee

The evidence in this case of three of those intended to have been incorporated by the Act of 1874, ch. 118, shews conclusively that the things *required* to be done to create a corporation under that Act, by the 4th section thereof, *were never done;* and the reasons are given why they were not done, viz., the new Act created greater liability. All presumption cannot prevail against this direct proof. This being a case where a corporation is created by statute which requires certain acts to be done before it can be considered *in esse,* such acts must be shown to have been done to establish the existence of the corporation. *Lyons vs. Orange, Alexander and Manassas Railroad Company,* 32 *Md.,* 18 *and* 30 ; *Mokelumne Hill Manu. Co. vs. Woodbury,* 14 *California,* 424, 426 *and* 427 ; *Field on Corporations, sec.* 29, *page* 36 ; *Lord & Robinson vs. Essex Building Association,* 37 *Md.,* 320, 324, 325 ; *Burt vs. Farrar,* 24 *Barbour,* (*N. Y.,*) 518 ; *Fire Dept. vs. Kipp,* 10 *Wendell,* 266 ; *Franklin Fire Ins. Co. vs. Hart,* 31 *Md.,* 59 *and* 61 ; *Boyce vs. Trustees M. E. Church,* 46 *Md.,* 359, 372, 373, 374 ; 1 *Potter on Corporations, secs.* 66 *and* 67, *and note* 7, *page* 109 ; *Angell & Ames on Corporations, sec.* 83 ; *St. Paul Division, &c. vs. Brown, et al.,* 9 *Minn.,* 157 *and* 165 ; *Wilmington and Manchester Railroad Co. vs. John Wright,* 5 *Jones Law,* (*N. C.,*) 304 *and* 305.

The meaning of the fourth section of the Act of 1874 is clearly that, until the acts of organization are completed, according to its requirements, the persons named do not become a corporation, and do not possess corporate rights or privileges, nor are they subject to the duties and liabil-

ities enumerated in the Act, among which is the liability of the directors and stockholders for the corporate debts under sec. 14 of said Act. There is an obvious reason for making the provisions of sec. 4 of said Act, a condition precedent to the exercise of corporate rights. It is a basis on which all subsequent proceedings are to rest. Defendant cannot be held liable in an action for the debts of a corporation which never had any legal existence. *Utley vs. Union Tool Company and Stockholders,* 11 *Gray,* 139, 140, 141 *and* 142; *Hudson vs. Carman,* 41 *Maine,* 84, 88 *and* 89; *Gardner vs. Post,* 43 *Pa. State,* 19, *and middle* 22; *Shaeffer vs. Missouri Home Ins. Co.,* 46 *Mo.,* 248 *and* 250; *Thompson's Liability of Stockholders, sec.* 411.

Stockholders are only liable for debts that might have been enforced against the company. *Thompson's Liability of Stockholders, sec.* 57; 3 *Paige,* 409, 415; 7 *Paige,* 373, 376.

The attempt of plaintiff to show the creation of a new corporation by implication, arising from acts of user, when an old one is shown to be in existence, to which all the acts relied on are referable, fails; because such acts must be unequivocably referable to the new one to avail to raise any such implication. For the same reason the doctrine of estoppel cannot be applied. *Woodfork vs. Union Bank,* 3 *Coldwell, (Tenn.,)* 488, 498; *Rex vs. Cambridge,* 3 *Burrow,* 1656, 1663; *De Witt vs. Hastings,* 40 *N. Y. Superior Court,* (8 *Jones and Spencer,*) 463, 464, 476; *Same Case, (affirmed,)* 69 *N. Y.,* 518; *Green vs. Dennis,* 6 *Conn.,* 302.

The certificate of deposit so much relied on by the appellant, to show the exercise of banking privileges, is in the name of the Union Banking Company of Baltimore City, an exercise of one of its powers as a savings institution under the 152nd sec. of the Act, 1868, ch. 471, which provides "that any savings institution incorporated under this article shall be capable of receiving from any person or persons or bodies corporate or politic, any deposit of

money," and having the right to receive the deposit of
money, it clearly had the right to give the certificate of
deposit offered in evidence to the plaintiff as evidence of
its indebtedness to the plaintiff.  *Barnes vs. Ontario Bank,*
19 *New York,* 152 *and* 166; *Union Bank vs. Jacobs,* 6
*Hump.,* 515 *and* 520; *Curtis vs. Leavitt,* 15 *N. Y.,* 269;
*Story on Promissory Notes,* (*7th Ed.,*) *sec.* 74, *and notes, page*
97, *and cases there cited; Seybert vs. Pittsburg,* 1 *Wallace,*
272; *Green's Brice's Ultra Vires,* 120.

The ground of estoppel is to prevent fraud.   The plain-
tiff must show that unless defendant be estopped, he is
defrauded.   The rule is well settled that the *representation*
must be *acted* upon for the estoppel to arise, for unless the
*representation is acted* upon, the estoppel cannot arise.
The party must be deceived; for if he knew the fact by
constructive notice, he is not deceived.   *Bigelow on Es-*
*toppel,* 467.

Can it be said that the plaintiff acted upon the alleged
representation?   Certainly not, for he did not deposit his
money with the Union Banking Company of Baltimore,
but with the Union Banking Company of Baltimore City,
as his own certificate of deposit shows.   *Bigelow on Es-*
*toppel,* (*2nd Ed.,*) 441, 492 *and* 493; *Homer vs. Grosholz &*
*Coquentin,* 38 *Md.,* 520; *Hambleton & Co. vs. Central Ohio*
*R. R. Co.,* 44 *Md.,* 536.

The representation is not claimed to have been made to
the plaintiff.   A third person, to whom the representation
was not made, cannot claim an estoppel unless it was
intended, or contemplated that he would act upon it; and
how can it be said that it was intended or contemplated
that this plaintiff would act upon it?   *Bigelow on Estoppel,*
(*2nd Ed.,*) 486.

A stranger casually hearing the representations cannot
rely on an estoppel.   *Morgan vs. Spangler,* 14 *Ohio State,*
102, 109.   An estoppel can never arise when it would
itself perpetrate a fraud, do injustice or injure the inno-

cent. 38 *Ill.*, 467. A general purpose to deceive is not sufficient to raise an estoppel. *Bigelow on Fraud*, 85 ; *Rutherford vs. Williams*, 42 *Mo.*, 24; *Atwood vs. Small*, 6 *Clark & Fin.*, 447.

Suppose the directors went *ultra vires*, can a mere stockholder be held personally liable for such acts without knowledge thereof? for defendant stood only as a mere stockholder when plaintiff's debt was created. The mere receipt of dividends is not enough. *Hilles vs. Parish*, 1 *McCarter Chancery*, (*N. J.*,) 380.

ALVEY, J., delivered the opinion of the Court.

This is an action brought by a creditor of a corporation against an alleged stockholder therein to recover in respect of the personal liability of the latter. The declaration alleges that the Union Banking Company of Baltimore was incorporated by an Act of the Legislature of this State, passed at the January session, 1874, ch. 118, whereby it was provided that the stockholders therein should be liable to the amount of their respective shares of stock, for all debts and liabilities of the corporation, incurred upon note, bill or otherwise; that the defendant became a stockholder in said corporation, and that the corporation became indebted to the plaintiff, while the defendant was such stockholder.

The defendant pleaded, never indebted, and that he did not promise, as alleged.

In the trial below, after the evidence was all in on both sides, the Court instructed the jury, that there was no evidence before them, legally sufficient, to show the existence of the corporation under the Act of 1874, ch. 118; and further, that there was no legally sufficient evidence that the defendant had ever participated in the organization of such corporation under the Act of 1874, so as to preclude him from averring that the Act of incorporation had never been accepted by the corporation therein named; and

therefore the plaintiff, under the pleadings in the cause, was not entitled to recover. Such being the opinion of the Court below, all the prayers offered on the part of the plaintiff were rejected.

To entitle the plaintiff to recover in this action it was essential that three things should be made to appear: 1, That a corporation, such as that alleged, should have been created; 2, That the defendant was a stockholder therein; and 3, That the plaintiff was a creditor of the corporation, and that he became such while the defendant was stockholder.

In order fully to understand the defence taken in this case, and the leading question presented, upon which all others depend, it is necessary to refer to a corporation, and the defendant's connection therewith, existing at the date of the passage of the Act of 1874, ch. 118, incorporating the Union Banking Company of Baltimore. It appears that certain parties, on the 8th of March, 1873, became incorporated under the general incorporation law of the State, of 1868, ch. 471, with the corporate name of the "Union Banking Company of Baltimore City." This corporation had for its objects, as shown by its articles and certificate of incorporation, the powers and privileges, 1st. of a savings institution, 2nd, of buying, selling, &c., land, &c., and 3rd, of a homestead or building association, as provided by the statute. The principal office was to be located in the city of Baltimore, and the capital stock of the corporation was limited to $150,000, to be divided into fifteen thousand shares, of the par value of ten dollars each. This corporation was regularly organized, and went into operation, and was conducting its business at the time of the passage of the Act of 1874, ch. 118. Of the capital stock of this corporation the defendant became owner of two hundred and fifty shares on the 29th of December, 1873. In January thereafter he became a director of the corporation, and was placed upon a committee to examine

a charter about to be submitted to the Legislature, for new and extended franchises, and which charter, after examination, he recommended as proper and desirable to be obtained. That charter was presented to the Legislature, and was passed, and is the Act of 1874, ch. 118, except certain amendments which were attached by the Legislature before its final passage.

The leading question in this case now is, whether this new Act of incorporation, thus obtained, was ever actually accepted by the corporators, and made to supersede and take the place of the former articles of incorporation; for if so, it would appear, the greatest difficulty in the way of the plaintiff's right to recover would be removed.

The Act of 1874, ch. 118, by its first section, declared the parties therein named, including the defendant, and their successors in office to be, *and they were thereby,* constituted and made a body corporate and politic, under the name and style of the Union Banking Company of Baltimore. By the third section, the same parties were constituted directors of the company for the first year, and until their successors should be appointed; and by the fourth section, the capital stock of the corporation was declared to be $150,000, to be divided into shares of ten dollars each, with the privilege of increasing the capital stock from time to time until it reaches $500,000. The fifth section of the Act conferred large banking powers, including the power to borrow money, receive money on deposit, and pay interest thereon, and to loan money, &c., and also the powers of a trust company. The fourteenth section provided that the continuance of the corporation should be on the condition that the stockholders and directors of the company should be liable to the amount of their respective shares of stock in the corporation for all its debts and liabilities upon note, bill or otherwise.

As we have seen, the Act by its terms, constituted and declared the corporators therein named a body corporate;

and upon their acceptance of the Act, if it was accepted, the corporation was brought into existence without anything more, by force of the statute itself. There was no condition precedent prescribed to the mere existence of the corporation, after the acceptance of the charter ; and in such case it has been often decided, not only that the corporation is *in esse,* but that it may incur liabilities to third parties with whom it may deal, notwithstanding the omission or failure on the part of the corporators to observe and fulfil the requirements of the charter in order to perfect the organization. *Frost vs. Frostburg Coal Co.,* 24 *How.,* 278 ; *Franklin Fire Ins. Co. vs. Hart,* 31 *Md.,* 59 ; *New Central Coal Co. vs. George's Creek Coal and Iron Co.,* 37 *Md.,* 537, 555 ; *Narragansett Bank vs. Atlantic Silk Co.,* 3 *Metc.,* 282. If a legislative charter of incorporation requires certain acts to be done before the corporation can come into existence, those acts must appear to have been done before a corporation can be considered *in esse ;* but this rule has no application to corporations expressly declared such by the Act of incorporation, upon the mere acceptance by the corporators, as in the case under consideration. *Fire Department vs. Kip,* 10 *Went.,* 266 ; *Ang. & Am. on Corp., sec.* 83.

Acceptance of the Act of incorporation by the corporators being essential to the existence of the corporation under the charter, in the absence of formal written evidence, the fact of acceptance was a question for the jury, under the direction of the Court as to what would amount to such acceptance. *Frost vs. Frostburg Coal Co.,* 24 *How.,* 279 ; *Farmers & Mech. Bank vs. Jenks,* 7 *Metc.,* 592, 594 ; *Bank U. S. vs. Dandridge,* 12 *Wheat.,* 64, 70–71. To prove the fact of acceptance, it was only necessary to show, in connection with the Act of incorporation itself, that the parties incorporated had actually used and exercised the powers and privileges conferred by the Act; and if such user and exercise of privileges could only be referred to

the Act of incorporation, such user would fully justify the
presumption that the Act of incorporation had been accepted,
and that the corporation was in the exercise of its func-
tions, and consequently liable for all the acts and con-
tracts done and entered into within the scope of its
authority.  *Narragansett Bank vs. Atlantic Silk Co.*, 3
*Metc.*, 282; *Farmers & Mech. Bank vs. Jenks*, 7 *Metc.*,
592.  In view of these well established legal principles,
this Court is of opinion, upon careful review of all the
evidence in the record, that the facts and circumstances
in proof required that the question of the acceptance of
the Act of incorporation by the corporators therein named,
should have been submitted to the jury.  The fact that
the Act of incorporation had been prepared and submitted
to the Legislature by the parties therein named; that the
Act contains the grant of large and valuable franchises;
that the same parties named in the Act were afterwards
found conducting a regular banking business, under a
name substantially that authorized by the legislative
Act of incorporation, with all the external *indicia* of a
regularly organized bank of discount and deposit, such as
that Act authorized, and when the exercise of such powers
would have been illegal and wholly unauthorized under
the law, if not derived from the Act of 1874, ch. 118, con-
stituted evidence certainly tending to prove that the Act
of incorporation had been accepted, and that the parties
were in the actual use of the powers and privileges thereby
granted.  And though the defendant on his part offered
evidence of a direct character to prove that the Act of in-
corporation had never been accepted; that there had been
no organization under it, and that all the banking busi-
ness transacted was done under the powers derived from
the organization under the general incorporation law;
still the question of acceptance was one for the jury.  For
the most that could be said of this state of case was that
there was a conflict of evidence; and the principle is,

where there is conflicting evidence as to a question of fact, whatever may be the opinion of the Court as to the value or preponderance of the evidence, the jury must be allowed to consider it and to make their deductions from it.

But it is insisted with great confidence on the part of the defendant, that inasmuch as the Act of 1874, ch. 118, provided that certain evidence should be furnished of the organization of the corporate body under the Act, as conditions or pre-requisites to the enjoyment of the benefits and privileges granted by the Act, and that evidence has not been furnished, therefore no corporation under the Act was ever brought into existence. Whether such position be tenable depends upon the terms of the statute. The fourth section provided that "when twenty-five *per cent.* of the *minimum* capital stock shall have been paid in, &c., and so certified by a majority of said corporation to the Treasurer and Comptroller of the State, and a certificate of their organization transmitted to the clerk of the Court of Appeals, to be by him recorded among the records of his office, and not before, shall they be entitled to all the benefits and privileges herein conveyed or intended to be conveyed." As will be observed, there is nothing in this language that imports a condition precedent to the existence of the corporation. The Acts required to be done could only have been done by the corporators after the Act of incorporation had been accepted, the requisite amount of the capital stock subscribed, and the organization under the Act completed. Not until then could the certificates have been furnished as required by the Act; and as we have seen, upon the acceptance of the Act the parties named became incorporated by force of the Act itself. The certificates were required as the evidence of what had been done, and the statute simply prohibited the exercise of the rights and privileges granted, that is to say, the active operations of the corporation, until the certificates were furnished.

The neglect or omission to observe the requirements of the law in this respect might have afforded the State a right to proceed against the corporation to deprive it of its franchises, but such neglect or omission can never be set up either by the corporation itself or its stockholders as a defence to an action to enforce their liabilities. It has been held in numerous cases that in actions against the corporation, or a stockholder thereof as such, it is not incumbent upon the plaintiff to prove that the corporators have complied with all the requirements of the Act of incorporation, unless the acts required are conditions precedent to the corporate existence; and that same principle precludes the defendant from defeating the action by showing the non-compliance with the requirements of the statute. By holding otherwise, parties might avail themselves of the powers and privileges of a corporation, without in any manner subjecting themselves to its duties and obligations, and might set up their own neglect of duty, or wilful omission to comply with the requirements of the statute, as means of discharge from all their just obligations under the law. This is forbidden by every principle of law and justice, and hence such a defence could never be tolerated. *Frost vs. Frostburg Coal Co.*, 24 *How.*, 274; *Chubb vs. Upton*, 95 *U. S.*, 661, 667; *Narragansett Bank vs. Atlantic Silk Co.*, 3 *Metc.*, 282; *Merrick vs. Reynolds Engine Co.*, 101 *Mass.*, 381; *Tarbell vs. Page*, 24 *Ill.*, 46.

Should the existence of the corporation be found, the next question is, whether the defendant was a stockholder therein at the time the debt was contracted with the plaintiff. If the stock-book referred to in the evidence be in fact the stock-book of the corporation created by the Act of 1874, ch. 118, and the defendant's name appears therein as a stockholder, that of itself would be sufficient *prima facie* evidence to warrant a jury in finding that the defendant was a stockholder, as the plaintiff has alleged. In the case of *Turnbull vs. Payson*, 95 *U. S.*, 418, 421, it was

expressly held, that where the name of an individual appears on the stock-book of a corporation as a stockholder, the *prima facie* presumption is that he is the owner of the stock, if there be nothing to rebut that presumption ; and, in an action against him as a stockholder, the burden of proving that he is not a stockholder, or of rebutting that presumption, is cast upon the defendant. And although the original subscription may have been made to the stock of the corporation formed under the general law, yet, if the subsequent Act of incorporation of 1874 was accepted, and by consent and general understanding the stock subscribed for in the first corporation was allowed to stand and be treated as stock taken in the second corporation, the defendant would be as effectually a stockholder in this last corporation as if he had become such by a new subscription. This mode of transferring the stock-list of one corporation to another was rendered quite feasible and easy of accomplishment by the fourth section of the Act of 1874, which provided for a *minimum* capital stock of the same amount, divided into shares of precisely the same par value, as that in the articles of incorporation under the general law. In such case, therefore, the only thing necessary would be the adoption by the last corporation of the stock-list of its predecessor, with the assent of the parties named; and their subsequent receipt of dividends upon the stock from the new corporation would be evidence of an unequivocal character of their holding the stock in such corporation. *National Bank vs. Case,* 99 *U. S.*, 628, 634. There was evidence, therefore, to have been submitted to the jury, from which they might have found that the defendant was stockholder as alleged by the plaintiff.

The only question in regard to the debt due the plaintiff is, whether it be the debt of the corporation formed under the articles of 1873, or the alleged corporation chartered by the Act of 1874, ch. 118. If the corporation

Hammond *vs.* Straus.

under the Act of 1874 was really brought into existence, and it was with that corporation that the plaintiff made deposit of his money, then, the fact that the certificate of deposit offered in evidence purports to have been made by the "Union Banking Co. of Baltimore City," instead of the "Union Banking Co. of Baltimore," can make no manner of difference in the plaintiff's right to recover. Such discrepancy would be wholly immaterial.

The prayers offered on the part of the plaintiff we think were properly rejected. By them the case was presented in an aspect, and with a view to principles, quite different from the principles in respect to which we have considered the case. It becomes unnecessary to go into any critical examination of those prayers, or to point out wherein they are defective. All that need be said is, that they could not be maintained consistently with the views expressed in the foregoing opinion.

The judgment of the Court below must be reversed and a new trial awarded.

*Judgment reversed, and*
*new trial awarded.*

(Decided 28th January, 1880.)