# THE NATIONAL EXPRESS AND TRANSPORTATION COMPANY,

*v.*

## MORRIS.

EVIDENCE; CORPORATIONS; STOCK AND STOCKHOLDERS; CONFLICT OF LAWS.

1. In an action to recover an assessment upon an alleged subscription to the capital stock of a corporation, if it be established that the party whose estate is sought to be charged was a member of the corporation, the entries in the books of the corporation, regularly made, are admissible in evidence against his estate to show the amount of stock subscribed for, the amount due thereon, and when the calls were made for payments; but such entries are not, *per se*, evidence sufficient to establish the fact of membership and to charge the party as a stockholder.

2. The fact that the party whose estate is so sought to be charged signed a subscription to stock in the National Express Company, which had no legal corporate existence, will not render entries in the stock books of the National Express and Transportation Company admissible in evidence as tending to show his membership in the latter company.

3. A statute providing that "A person in whose name stock or shares stand on the books of the company shall be deemed the owner thereof as regards the company," will not, in such a suit, justify the admission of the entries in the books of the corporation as *prima facie* evidence of the membership in the corporation of the party whose estate is sought to be charged.

4. The law of the State or country where a contract is sought to be enforced, and not that of the State or country in which it was made, governs the question of the admissibility of evidence in a suit upon such contract.

No. 876. Submitted May 9, 1899. Decided June 30, 1899.

HEARING on an appeal by the plaintiff from a judgment on a verdict directed by the trial court, in an action to recover an assessment on certain shares of the capital stock of the plaintiff corporation.   *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Walter V. R. Berry, Mr. Benjamin S. Minor,* and *Mr. Charles Marshall* for the appellant:

1. As to the identity of the National Express Company and the National Express and Transportation Company: The evidence in the preliminary proceedings makes it clear that when Mr. Merrick paid in his assessments he had knowledge and notice that he was paying them to the National Express and Transportation Company. The law presumes that he had notice of the change of name. A mere change of name under such circumstances does not relieve a stockholder of liability. The decree of the Chancery Court of the City of Richmond "is decisive as to the informalities in the incorporation" and "also settles the question that the mere change of name does not avoid the liability of the stockholder." *Glenn* v. *Springs,* 26 Fed. Rep. 494; *Howard* v. *Glenn,* 85 Ga. 238, 259.

When the defendant is sued on his alleged subscription to the capital stock of the National Express and Transportation Company under the name of the National Express Company and defends on the ground that he subscribed

only to the company last named, the *onus* is on the plaintiff to show the legal identity of the two companies; and the minutes of the meetings of subscribers to the company, of whom defendant was one, being properly identified, are admissible as evidence against him. *Semple* v. *Glenn,* 91 Ala. 246–260; *Mahon* v. *Wood,* 44 Cal. 463; *McCormick* v. *Gas Co.,* 48 Kans. 614; *Joseph* v. *Davis,* 8 So. Rep. 830. A mere change in the corporate name after subscriptions are made will not preclude recovery. 23 A. & E. Encyc. L., 828, 829, notes.

2. The books of a corporation are *prima facie* evidence of subscription by those whose names appear thereon as owners of stock. The books of a corporation are *prima facie* evidence of its membership. *Turnbull* v. *Payson,* 95 U. S. 418; *Glenn* v. *Springs,* 26 Fed. Rep. 494; *Vanderwerken* v. *Glenn,* 85 Va. 9, 14; *Hawkins* v. *Glenn,* 131 U. S. 319, 325; *Railroad* v. *Applegate,* 21 W. Va. 172; *Hoagland* v. *Bell,* 36 Barb. 57; *Holland* v. *Iron Co.,* 68 N. W. Rep. 50; *Railway Co.* v. *Long's Amdr.,* 27 S. E. Rep. 297; 1 Cook on Corp., Sec. 55, cases; 2 Beach on Corp., Secs. 125, 575, 724, cases; 9 A. & E. Encyc. L. (N. S.), 896, note 2; *Ownings* v. *Speed,* 5 Wheat. 420; *Bridge Co.* v. *Lewis,* 63 Barb. 112.

3. There was no material change or departure from the character and purposes of the National Express Company.

4. The books of the company and the entries therein were fully proved. The entries made in the books of the company offered in evidence were all in the handwriting of the proper officers of the company. The witness Mayo identifies the books in evidence as official books of record of the company. He identifies the handwriting of the officers of the company (all of whom are dead) who made the entries; and especially the handwriting of the treasurer of the company, most of the entries being in the handwriting of the latter, who was the proper officer to make such entries. Many of the entries were made by Mr. Mayo himself in his official capacity in the usual course of business.

Under such circumstances, it is clear that the entries, as well as the books, were fully proved.   9 A. &. E. Encyc. L. (N. S.) 896, 897; *Bridge Co.* v. *Lewis*, 63 Barb. 112. All the books of the company are more than thirty years old.   In addition to the evidence of Mayo as to the genuineness of the books of the company, the custody of these books since the company ceased business in 1866 to the present time was fully shown by the evidence.   Under such circumstances the law recognizes a conclusive presumption in the genuineness of the documents, or books, and such books are admissible in evidence without proving the handwriting.   1 Taylor on Evidence, Secs. 87, 88; *Wynne* v. *Tyrwhitt,* 4 B. & Ald. 376; *Jackson* v. *Blanshaw,* 3 Johns. 298; *Bullen* v. *Michel,* 2 Price, 399; *Bertie* v. *Beaumont,* 2 Price, 303; *Ely* v. *Stewart,* 2 Atkyns, 44; *Roe* v. *Rawlins,* 7 East, 279, 291; *Doe* v. *Cartwright,* 1 Car. & P. 218; *Sanger* v. *Merritt,* 120 N. Y. 109, 114; *Warren* v. *Greenville,* 2 Strange, 1129, cases; *Higham* v. *Ridgway,* 10 East, 111, 120; *Booge* v. *Parsons,* 2 Vt. 456, 460; *Rust* v. *Corporation,* 6 Pick. 158; *King* v. *Little,* 1 Cush. (Mass.), 436; *Boston* v. *Weymouth,* 4 Cush. 538.

It will be seen by these citations that instruments, other than deeds, accompanied by possession, prove themselves after thirty years.   Receipts, letters and certificates of church registers and the like, it is shown, prove themselves.   The book given in evidence in this case was the treasurer's sale book.   See, also, *McReynolds* v. *Longenberger,* 57 Pa. St. 13; *Rex* v. *Ryton,* 5 T. R. 259; *Williams* v. *Conger,* 49 Tex. 582; *Floyd* v. *Tawksbury,* 129 Mass. 362; Wharton on Evidence, Secs. 703–4, 732; 1 Greenleaf on Evidence, Sec. 570; 2 Jones on Evidence, Sec. 330, 544.   Courts have uniformly discountenanced defenses to subscriptions and have rigidly enforced the liability of subscribers.   This rule should be the more rigidly enforced, when, through technical obstructions and delays, creditors have been prevented for years from recovering what is justly due them.   *Lewis* v. *Glenn,* 84 Va. 983.

*Mr. Geo. E. Hamilton* and *Mr. M. J. Colbert* for the appellee:

The plaintiff's contention that the books of a corporation are *prima facie* evidence of subscription by those whose names appear thereon as owners of stock is not the rule of law. *Carey* v. *Williams,* 79 Fed. Rep. 906; Wharton on Evid., (3d Ed.), 662; Thompson on Corp., Sec. 1924; *Iron Co.* v. *Green,* 88 Fed. Rep. 207; *Howard* v. *Glenn,* 85 Ga. 264; *Davis* v. *Sweeney,* 64 N. Y. 467.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

This action was brought by the National Express and Transportation Company, a corporation formed under the laws of the State of Virginia, against the defendant, Martin F. Morris, executor of the late Richard T. Merrick, deceased, to recover an assessment of 50 per cent. on certain shares of the capital stock of said corporation, alleged to have been subscribed for and held by said Merrick in his lifetime. The action is brought in the name of the corporation as legal plaintiff, for the use of George G. Carey, as substituted trustee, appointed by a decree of a court of chancery in the State of Virginia, and which assessment of stock was made by a decree of the Circuit Court of the County of Henrico, of that State, dated March 26, 1886, in the case of W. W. Glenn's Administrator against the National Express and Transportation Company.

The declaration alleges that Merrick was the holder of the fifty shares of stock assessed, and therefore liable to pay said assessment when lawfully required so to do; but the special circumstances under which the stock was acquired are not alleged in the declaration. It is not alleged that Merrick subscribed for the stock of the National Express and Transportation Company after the charter of that company was obtained and the corporation organized thereunder; nor is it alleged that the stock was assigned or

transferred to him by anyone that did subscribe to the stock of the National Express and Transportation Company. The manner of acquisition of the stock was left to be disclosed by the proof that might be offered.

Several defenses were interposed, and among them the general issue pleas of never promised as alleged, and never indebted as alleged. The question, however, as to any special defense is quite immaterial on this appeal, as the court below, at the conclusion of the plaintiff's evidence, directed a verdict to be entered for the defendant, upon the ground of the insufficiency of the evidence to support a verdict for the plaintiff, and this ruling of the court is the only ground of error assigned on this appeal.

At the trial the plaintiff placed in evidence a subscription list of the subscribers to the stock of the National Express Company, made at Georgetown, D. C., which is as follows:

"*Subscription list of the stock of the National Express Company.*

"We, the undersigned, hereby subscribe the amount and number of shares opposite our names to the stock of the National Express Company, and bind ourselves, our heirs, etc., to pay said amount in such instalments as may be called for by said company, and to pay one per cent. at the time of subscription."

To this heading appears the name, among others, of R. T. Merrick for fifty shares, of the aggregate amount of $5,000.

On this list were the names of twenty-eight subscribers, and the aggregate amount of stock set opposite their names was one thousand and ten shares. To connect the subscription of R. T. Merrick, one of the names on this list of subscribers for the stock of the National Express Company, to the stock of the National Express and Transportation Company, subsequently incorporated, the plaintiff proved the signature of Merrick to the subscription list to be genuine, or, rather the genuineness of the signature was not denied by the defendant; and then offered in evidence a large number

of documents, and books with certain entries therein, described as the books and records of the National Express and Transportation Company. These documents and books consisted of a list of subscribers to the stock of the National Express Company; the preliminary proceedings for the organization of the National Express and Transportation Company; stock book No. 1 of the National Express and Transportation Company; treasurer's blotters A and B of the National Express and Transportation Company; and also the cash book, stock ledger, proceedings of stockholder's meetings, and list of stockholders of the National Express and Transportation Company. With these documents and books there was certain oral evidence given by witnesses examined on the part of the plaintiff, to show the origin and character of the documents and books, and to explain the entries therein, and to show when and by whom made and kept, and in whose custody and possession such books and lists had remained since the corporation had ceased operation in 1866, and its effects and affairs had been transferred to and placed in the hands of trustees. But, in regard to the entries in these books professing to have relation to the subscription of Merrick to the stock of the corporation, these witnesses do not profess to have any personal knowledge whatever, and can not say, whether he was stockholder or not; and the entries were all made by other parties than the witnesses examined except certain entries made upon the stubs of the stock certificate book of the company by the witness Mayo, under the direction of the treasurer of the company, who is since dead. The witness, however, can not say whether the certificate of stock made out by him was ever mailed or delivered to Merrick or not, or whether Merrick ever requested such certificate or ever had knowledge that such certificate had been issued. To the admissibility of these documents and books thus offered in evidence, the defendant objected, but the objection was overruled, and the evidence admitted, because it was supposed to have some

tendency to establish the fact in issue. But this evidence not being followed up with other evidence, and the plaintiff announcing that it rested its case, the court directed a verdict for the defendant, because of the insufficiency of the evidence to support a verdict for the plaintiff. It was to this ruling that the plaintiff excepted, and from which ruling it has brought its appeal to this court.

As will be perceived, there is no date to the list of the Georgetown subscribers to the stock of the National Express Company given in evidence; but, from the circumstances of the case, it is made quite clear that such subscription must have been made some time before the 30th of October, 1865. At the time of this subscription taken there was no law of Virginia authorizing the organization of the National Express Company, but there was a special statute of that State, entitled "An act to incorporate the Southern Express Company," passed March 22, 1861. It was under that act that the National Express Company was, or was attempted to be, organized. By that act certain persons named therein, their associates, successors and assigns, were declared "to be a body corporate and politic by the name of the Southern Express Company, for the purpose of an express transportation company." The capital stock of the company was fixed at $500,000, with power to increase the amount from time to time as might be deemed necessary, not to exceed $1,000,000, but such increase was required to be sanctioned by vote in person or by proxy of two-thirds in amount of all the stockholders of tho company present. The company was authorized to commence business as soon as its capital stock was fully subscribed and $50,000 of the same was paid in; and upon such subscription being made, a stockholders' meeting could be called "by serving a notice signed by the stockholders calling the meeting, of the time and place of such meeting, twenty days at least before the time of holding the same, on each stockholder personally, or by leaving it at his residence, or by

putting the same in the postoffice at Richmond, directed to
him at his usual or reported place of residence, and paying
the postage thereon; provided, however, that any other
mode or time of calling said meeting shall be lawful, if all
the stockholders consent thereto in writing or are repre-
sented thereat." The act then provides the mode and
manner of organizing the company and electing its officers,
and prescribes their powers and duties. Among other
things, it declares that the company "shall have power to
do an express transportation business by land or by water,
for the conveyance of persons and property of every kind,
from, to and between any place in Virginia, and any place
in or beyond the limits of Virginia, in their own convey-
ances, or in those of other persons; and to create and organ-
ize branch agencies for the same purpose," etc. It was
further provided that the principal office of the company
should be kept at Richmond, unless the same should be
changed by a vote of two-thirds of the directors to some
other place in that State.

In September, 1865, a scheme was conceived by certain
parties in Virginia, for organizing an express company, un-
der the act just referred to, of March 22, 1861. With that
purpose in view, a meeting was held in Richmond on the
18th and 19th of September, 1865. In explanation of the
movement it was stated in that meeting that the parties con-
cerned proposed to make the act of Virginia of March 22,
1861, the basis of the corporation proposed to be organized,
but as a much larger capital would be necessary for it than
that authorized in the charter referred to, and as other pro-
visions not contained in that charter would be required, ap-
plication would be made to the then next legislature, which
would, as thought, no doubt grant the company a modified
charter adapted to its objects and the magnitude of its plans.
At that meeting a committee was appointed to take the
necessary steps to bring about the organization of the cor-
poration, and to open books for the subscription to the

stock of the proposed National Express Company; and it was also resolved that the operations of the National Express Company should commence as soon after $250,000 of the stock should be subscribed and 5 per cent. of that amount was paid in, as practicable. There was also a committee appointed to apply to the legislature for a modified charter. And until the meeting of stockholders of the company could be had, under the provisions of the act of March 22, 1861, there was appointed an executive committee, charged with the duty of performing all such acts as might be necessary to a proper organization of the company.

At a meeting of this executive committee, held in Richmond, on the 12th of October, 1865, it was ordered that certain gentlemen be appointed to visit certain of the principal cities of the country, to promote the interest of the company, and to solicit subscription to the stock thereof, and to appoint agents to take subscriptions to such stock. And at that meeting it was resolved that the capital stock of the National Express Company be increased to $10,000,000, and that subscriptions to that amount be received, *subject to the ratification of the next general meeting of stockholders.* And it was further resolved that the next general meeting of stockholders should be held in the city of Richmond on the 30th day of October then instant, and that ten days' notice thereof be given by publication in the daily papers in certain named cities, but no notice was required to be published in the cities of Washington or Georgetown, in the District of Columbia, where Richard T. Merrick resided.

At the stockholders' meeting, called pursuant to the previous resolution of the executive committee, and held on the 30th and 31st of October, 1865, the stockholders then assembled proceeded to organize the corporation and to elect a board of directors ; and the board of directors then elected immediately thereupon elected Gen. Joseph E. Johnston president of the company. The stockholders also, at that

meeting, directed the board of directors to apply to the legislature of Virginia for such alteration in the charter of the company under which it was organized as might be deemed proper. From this time the board of directors appear to have assumed for the corporation, *though without any legal authority therefor*, the name and style of "The National Express and Transportation Company." The board of directors at a meeting on the 3d of November, 1865, adopted a seal of the company and determined upon the form of the certificate of stock, and also resolved that the books of subscription to the stock of the company *be closed on and after that date.*

The amended or substituted charter was obtained from the legislature as proposed, having passed the legislature December 12, 1865. It is entitled "an act to amend and re-enact an act to incorporate the Southern Express Company, passed March 22, 1861; *and to incorporate the National Express and Transportation Company."* It does not appear to have been accepted and adopted until January 16, 1866. On that day, it appears there was a meeting of the stockholders at Richmond, for the purpose of organizing under the new charter; and the organization was effected by the election of the then existing provisional board of directors, as directors in the new organization. At that meeting it was stated by the treasurer *pro tem.* that $4,329,100 of the stock of the company had been subscribed, and $173,687 of it had been paid in. There is, however, no evidence whatever that there was any previous notice given of this stockholders' meeting.

By the amended or substituted charter of the 12th of December, 1865, it is provided that certain persons named, and their associates and successors, *should be a body corporate by the name of the National Express and Transportation Company*, for the purpose of doing an express and transportation business; that the capital stock of the company should be $5,000,000, with power from time to time to increase

that amount to $10,000,000. The company was given power to commence business as soon as one-third of the capital stock was subscribed, and $100,000 of the amount paid in; and upon such subscription being made, a general meeting of the stockholders of the company was authorized to be called, by advertising the time and place of meeting at least twenty days before the time of holding the same, in three daily newspapers of Richmond; provided that any other mode or time of calling such meeting should be lawful, if two-thirds of the stockholders were represented thereat. It does not appear, however, that any notice whatever was given of such meeting, either under the old or the new charter. It does not appear, indeed, it is not pretended, that Merrick participated in any of the preliminary meetings of the stockholders, or that he was ever personally present at any stockholders' meeting, either under the old or the new charter, or that he ever had notice brought home to him of such meetings, either by publication or otherwise.

But, instead of primary and direct proof that he did participate in such meetings and the organization of the corporation under the new charter of December 12, 1865, or consented in some binding form to become a stockholder in the latter corporation by virtue of his subscription to the projected corporation under the act of March 22, 1861, by the name of the National Express Company, the plaintiff proposed and attempted to establish the obligation of Merrick to pay for the stock so subscribed for, by showing and proving the entry on the stub in the stock book of the National Express and Transportation Company, which entry, with the blanks therein, is as follows:

"No. 146. Fifty shares. Date: Dec. 21st, 1865.
Issued to Richard T. Merrick, of Georgetown, D. C.
Received certificate as above described......18— Receipt
  on file.
Forwarded by express to Georgetown, D. C., December 22, 1865."

These entries have no other support than that they are found in the stock book of the National Express and Transportation Company, and that they were made by the witness Mayo, without any knowledge whatever of the facts they purport to represent, but were made upon the direction of an officer of the company, who has since died; and while the witness says he made out the stock certificate mentioned in the entry, he says that it was *probably*, with other certificates, delivered to the local express agent or messenger to be sent by express. But no receipt is produced, nor was the supposed certificate attempted to be traced. And whether the certificate referred to in the entry was ever sent or not the witness does not profess to have the slightest knowledge. Nor is it shown that Merrick ever applied for the certificate, or that he had any knowledge whatever that such certificate had ever been issued, or that his name even appeared upon the books of the company.

It is insisted, however, on the part of the plaintiff, that the entries in the stock book of the National Express and Transportation Company should be received as primary evidence *per se* of the fact that Merrick was a stockholder in that company. To this we can not assent. For while it is clear, that if it be established that the party charged is a member of the corporation, the entries in the books of the corporation, made in the regular course of the business of the company, would be admissible against the member to show the amount of stock subscribed for, the amount due thereon, and when the calls were made for payments; yet such entries are not, *per se*, evidence sufficient to establish the fact of membership, and to charge the party as a stockholder of the corporation. But if such books and entries were accompanied with other proof, such as that the alleged subscriber to the stock attended the meetings of stockholders or otherwise participated in organizing the company; or applied for, or received the certificate of stock of the National Express and Transportation Company after it was

organized, or had paid assessments upon the stock of the company; then the books of the company and the entries therein, made in due course of business, would have been evidence upon which the jury could have found that the alleged subscriber to the stock was a member of the corporation, though the charter had been amended and changed subsequent to the time of the alleged original subscription.

This principle is held, and very fully and clearly illustrated, in the case of *Keyser* v. *Hitz*, 133 U. S. 138, 149. That was the case of an action brought to recover an assessment of stock of a national bank. The assessment was made upon the stockholders equally and ratably; and it was averred in the declaration that the defendant held or owned at the time of the bank's suspension, 200 shares of its stock; and that, by reason thereof, the plaintiff was entitled to recover the amount of the assessment. The defendant pleaded not indebted as alleged, and that she did not at any time hold or own any stock in said bank; and that the entries in the books of the bank showing her to be a stockholder were without her authority and fraudulent. Under the instruction of the court below the verdict of the jury was found for the defendant. On writ of error, the Supreme Court of the United States reversed the judgment, but in their opinion they said:

"We must not be understood as saying that the *mere* transfer of the stock on the books of the bank to the name of the defendant imposed upon her the individual liability attached by law to the position of shareholder in a national banking association. If the transfers were, in fact, without her knowledge and consent, and she was not informed of what was so done—nothing more appearing—she would not be held to have assumed or incurred liability for the debts, contracts and engagements of the bank. But if, after the transfer, she joined in the application to convert the savings bank into a national bank, or in any other mode approved, ratified or acquiesced in such transfer, or accepted any of

the benefits arising from the ownership of the stock thus put in her name on the books of the bank, she was liable to be treated as a shareholder, with such responsibility as the law imposes upon the shareholders of national banks." This is a plain proposition.

The plaintiff, however, contends that, upon the special circumstances of this case, the fact that the name of Merrick appears on the stock book of the National Express and Transportation Company, when taken in connection with the previous subscription to stock in what was called the National Express Company (though at the time of such subscription there was no such legally organized corporation in existence) should be held sufficient to give rise to a *prima facie* presumption that Merrick was or had become a stockholder in the National Express and Transportation Company. But this proposition can not be maintained to the extent contended for, and does not relieve the case of the difficulty under which the plaintiff is placed in respect to the proof required to be supplied to establish the fact that Merrick was a stockholder in the plaintiff corporation. There must be proof, legal and competent, to establish the existence of a contract of subscription to the stock of the plaintiff; and while it is true that such contract may be shown to exist without formal subscription in writing, yet the evidence must be such as to establish the legal existence of a binding contract for the stock of the plaintiff corporation. It is not pretended that there was any formal written subscription to the stock of the National Express and Transportation Company; and the only evidence offered upon which to base the finding of a binding contract of subscription to the capital stock of that corporation is the previous subscription by Merrick to the stock of what was called the National Express Company, and the books, with the entries therein, to which we have referred, of the subsequently organized corporation of the National Express and Transportation Company. And upon this evidence it is gravely

contended that, as the name of Merrick appears on the stock book of the latter company as a stockholder therein, that entry is *prima facie* evidence that he was in his lifetime, and his executor since his death, the owner of the stock in question, and that the burden of proof to show the contrary of such presumption is upon the defendant; and consequently the books of the corporation, with the entries therein, containing the name and amount of stock of the alleged stockholders, are admissible and sufficient evidence *per se* to charge the alleged stockholder in an action to recover an assessment upon such stock. This contention is supposed to be justified and supported by what was said by the late Mr. Justice Clifford in the case of *Turnbull* v. *Payson*, 95 U. S. 418, 421, and certain subsequent cases, quoting and apparently following that *dictum* of the learned justice.

It is true, in the case of *Finn* v. *Brown*, 142 U. S. 67, and also in the case of *Hammond* v. *Straus*, 53 Md. 1, 15, and in certain other State decisions, the *dictum* of Justice Clifford is referred to with apparent approval. But in neither the case of *Turnbull* v. *Payson*, or *Finn* v. *Brown*, or that of *Hammond* v. *Straus*, was the *dictum* of Mr. Justice Clifford at all essential to the decision of the case. In each of those cases there was abundant evidence, without the aid of the presumption stated, to maintain the action against the defendant. What was said, therefore, by Mr. Justice Clifford and apparently cited with approval in the subsequent cases, was nothing more than a mere *obiter dictum*, and such as plainly contravenes the first principles of evidence.

The same contention was made and strongly urged by this same plaintiff in the case of *Carey* v. *Williams*, on review in the Circuit Court of Appeals for the second circuit, before Mr. Justice Peckham, Circuit Justice, and Wallace and Shipman, Circuit Judges, April 18, 1897. 79 Fed. Rep. 906. That was a case, like the present, of an action brought against an alleged stockholder of the corporation to recover an assessment upon stock. In that case the plaintiff sought

to prove that the defendant was a stockholder: First, by an admission alleged to have been made by the defendant in an affidavit in a certain suit by Mayer against the National Express and Transportation Company, in the Supreme Court of New York; and secondly, by the entries in the books of the National Express and Transportation Company, showing the transfer of 250 shares of stock from the company to the defendant, November 1, 1865, and his payment of two calls thereon for $1,250 each—the first November 1, 1866, and the second, March 9, 1866. Upon this proof the trial court ruled that the evidence upon the issue, whether the defendant had ever become a stockholder of the company, was insufficient to justify the submission of that issue to the jury; and the only assignment of error which was argued in the Court of Appeals, was that which challenged the correctness of that ruling; but the ruling of the court below was affirmed. And the Circuit Court of Appeals held that entries in the books of a corporation, showing the transfer of stock to a certain person, and payments by him thereon, *are not prima facie evidence* that he is a stockholder, in a suit to charge him as a stockholder of the corporation. The opinion in that case, as delivered by Judge Wallace, is not only instructive and important as the exposition of an important principle of corporation law, but is especially pertinent to the question presented on this appeal; and hence, we are justified in making an extended extract therefrom. The court said:

"Inasmuch as there was no evidence of the alleged admission of the defendant, the only evidence in the case tending to prove that he was a stockholder was that consisting of the entries in the books of the corporation. We are thus brought to the important question in the case, which is, whether the entries contained in the corporate books of the company afford *prima facie* evidence that the defendant was a stockholder. The relation of corporation and stockholder is a contractual one, and can only be created with

the consent, express or implied, of both parties. The assent is evidence when the name of the stockholder appears as such upon the books of the company; as to the corporation, by its act in placing his name there; and as to the stockholder, by his knowledge and acquiescence in the act. It is not enough that he appears to be a stockholder upon the books, and when this occurs without his sanction he incurs no liability as such.

"It is an elementary rule of the law of evidence, that a party can not make evidence in his own favor, of a contract, by his own statements or declarations of its existence or its terms. They are evidence against him but not for him. Accordingly, it has uniformly been held that entries in the books of a co-partnership, in the nature of declarations showing who are the persons that compose the firm, are not evidence in behalf of the partners, as against a third person, for the purpose of showing that the latter was a member of the firm. There is no reason why a different rule should be applied to the entries in the books or records of a corporation which tend to charge a party with the responsibilities of a stockholder. Corporations are not exempt from the ordinary rules of evidence, and there is no stronger presumption of honesty, or regularity, or accuracy, as to their books or records than there is in the case of natural persons.

"Prior to the case of *Turnbull* v. *Payson*, 95 U. S. 418, in which Mr. Justice Clifford made an observation to the contrary, there was no respectable authority for the proposition that, without the aid of some statute changing the ordinary rule of evidence, the appearance of the name of a person on the books of a corporation as a stockholder, without other evidence, created a presumption, as against him, of his ownership of the stock. The only reported decision in which it had been so declared was the *nisi prius* case of *Hoagland* v. *Bell*, 36 Barb. 57. The opinion consisted merely of the statement that the appearance of the defendant's name on the stock book as a shareholder was *prima facie*

evidence that he was so, and the burden was then thrown on him to disprove that he was a shareholder. No reasons were assigned, no authority was cited, and there was no discussion of the question upon principle. It may be that the statute under which the corporation was organized dispensed with the ordinary proof, by a provision which has occasionally been adopted, giving to such an entry upon the books of the corporation the force of evidence. No subsequent decisions by the courts of New York have adopted that decision, and, as will be seen, it is irreconcilable with their later decisions."

In a subsequent part of the opinion the court say: "The remark of Mr. Justice Clifford in *Turnbull* v. *Payson* has been cited in several subsequent adjudications as authority for the general proposition which it embodies (*Lewis' Adm.* v. *Glenn,* 84 Va. 947; *Vanderwerken* v. *Glenn,* 85 Va. 9; *Railroad Co.* v. *Applegate,* 21 W. Va. 172), in all of which cases it was unnecessary to decide the proposition, because there was other evidence tending to show a subscription for or purchase of shares by the defendants, and in *Liggett* v. *Glenn,* 51 Fed. Rep. 381, where the point was not necessarily in question, the judgment proceeded upon the ground of the erroneous reception of evidence.

"Read in connection with the facts of the case, it is by no means clear that Mr. Justice Clifford meant to imply that the *prima facie* presumption would arise merely from the appearance of the name of the alleged stockholder on the books of the corporation. The case was one where the name properly appeared upon the books, and it is to be presumed that the observation was addressed to the state of facts under consideration. In any other view it was *obiter·* Under the circumstances we do not feel constrained to con‾ sider the proposition as fully decided by *Turnbull* v. *Payson,* and we think it is such a departure from principle that it should be rejected. In many cases its application might be most dangerous and unjust. Where the alleged stockholder

has died and the suit is against his legal representatives, such a rule of evidence might be fatal to their rights."

The principle of the case just cited and quoted from was fully adopted and followed in the case of the *Iron Company* v. *Green*, 88 Fed. Rep. 207, in the same Circuit Court of Appeals that decided the case of *Carey* v. *Williams*. And in the case of *Chase* v. *Railroad Co.*, 38 Ill. 215, the question was whether the corporate books were admissible against a defendant in an action to recover for unpaid shares; and the court were unanimously of the opinion that they were not, in the absence of proof that the defendant was a member of the corporation. Chief Justice Breese, in delivering the opinion of the court, placed the decision upon the principle that a party can not make evidence for himself against a third party. See, also, the cases of *Rudd* v. *Robinson*, 126 N. Y. 113, and *Bryce* v. *Joynt*, 63 Cal. 375.

The text-writers upon the principles of evidence would seem to be all of one opinion upon the subject, and to maintain that entries in the books of a corporation are not admissible in evidence, *per se*, to charge a party as shareholder. In Thompson on Corporations, Sec. 1924, it is said that "on principle, the books and records of the corporation are not competent evidence to prove that the defendant is a stockholder; for the general rule is that one party to an alleged contract can not prove the existence of a contract by its own private memoranda or record. The mere statement of this principle ought to be enough to convince one of its correctness without argument." The same principle is laid down, as settled law, in Whart. on Ev. (3d Ed.), Sec. 662, where it is said that, in suits by corporations against its members, its books can not be used as proving on behalf of the corporation its self-serving entries.

The same principle is applicable in regard to the non-admissibility of the corporate books and the entries therein, as is applicable in the case of partnership, where it is sought to establish the partnership relation as against a particular

individual, by the introduction of the books and entries of the alleged firm. The statements and acts of the defendant's alleged co-partners are no evidence against him until he and they are shown to have been connected in some way with each other in a partnership relation; for it would be obviously reasoning in a circle to infer a partnership from the entries found in their books, unless he and they could be connected by other evidence admissible against him. · 1 Lind. Part. (5th Ed.) 85. Indeed, the mere entries in the corporate books to prove the fact of stockholder of the corporation, and thus to fix upon the party the liability of stockholder, would seem to be admissible upon no principle whatever. It is but the attempt to maintain the assertion of the bare conclusion of a proposition of fact without proof of the essential facts upon which that conclusion is supposed to be based. This is manifestly repugnant both to the rules of logic and the settled principles of law.

As conclusive to show that, by the common law and according to the general principles of evidence, the books of private corporations and the entries are not admissible *per se* to establish the fact that a particular individual is stockholder in the corporation, we may refer to the fact that in England and in some of the States of this country legislation has been had, providing that stock books or registers of private corporations may be received as *prima facie* evidence of the defendant being a stockholder, and of the number and amount of shares, in actions for calls made upon the stock. We have an example of this in the English Statute of 8 & 9 Vict., Ch. 16, Sec. 28. But in regard to such legislation, even by the British Parliament, it has been said, that "it is a strong measure to make a book kept by the company evidence against third persons; and therefore the requisite of the statute ought to be strictly pursued." *Railroad Co.* v. *Brownrigg*, 4 Exch. 426, 429. And it is said by Taylor in his work on Evidence, Vol. 2, page 1516: "Parliament having, in these instances, disregarded the common law rule

which prohibits a man from producing his own books as
evidence for himself, the courts will take care, before they
permit a company to avail itself of such an exceptional
privilege, that the provisions of the statute conferring the
privilege have been strictly complied with." This legisla-
tive exception to the common law rule of evidence is elab-
orately considered, and the limitations to the exception
clearly laid down, by the House of Lords in the case of *Bain*
v. *Whitehaven, etc., RR. Co.*, 3 Ho. L. Cas. 1, 22, 23.

But it is contended by the plaintiff that the statute of
Virginia, which provides that "A person in whose name
stock or shares stand on the books of a company shall be
deemed the owner thereof *as regards the company*," author-
ized the introduction of the books of the corporation as
evidence against the defendant. To this we can not agree.
It is manifest, we think, that this provision of the statute
has no application to a case like the present. It does not
profess, in terms, to make the books of the company ad-
missible as evidence in favor of the company in actions
against third parties. And as was said by the court in the
case of *Carey* v. *Williams, supra,* where the same contention
was urged as is urged here: "This statute only means that
a corporation which has acknowledged such a person as
stockholder and admitted him to be such upon its records,
shall not be at liberty to dispute the relation. Its language
does not require any broader meaning to be given it."

If, however, it were conceded that the courts of Virginia
would so interpret this provision of the statute as to admit
the books and entries therein as evidence in favor of the
corporation against a defendant sought to be charged as
stockholder, it would not by any means follow that courts of
other States and jurisdictions would so hold. But apart
from the mere construction of the statute, the statute relates
to a question of evidence, and not to the law that governs
the making and interpretation of the contract; and it is a
well settled principle, that the law of the State or country

where a contract is to be enforced, not that of a country or State in which it was made, governs the question of admissibility of evidence on a trial arising out of such contract. *Bain* v. *Whitehaven Railway Co.*, 3 Ho. L. Cas. 1.

It follows therefore that the judgment of the court below must be affirmed; and it is so ordered.    *Judgment affirmed.*

Mr. Justice MORRIS did not sit with the court in the hearing of this cause, his place being taken by Mr. Justice Cox, of the Supreme Court of the District of Columbia.