### THE LESSEE OF ISAIAH FROST AND OTHERS, PLAINTIFFS IN ERROR, *v.* THE FROSTBURG COAL COMPANY.

An act of the Legislature of Maryland examined whereby certain named persons, and such others as might be associated with them, were incorporated by the name of the Frostburg Coal Company.

The defendants in this suit were made a corporation by the charter, the persons named in it constituting the corporate body, clothed with the powers and privileges conferred upon it, and were capable of taking and holding real estate from the beginning.

Even if it were otherwise, and some irregularities occurred in the organization of the company, inasmuch as no act made a condition precedent to the existence of the corporation has been omitted or its non-performance shown, a party dealing with the company is not permitted to set up the irregularity.

The courts are bound to regard it as a corporation, so far as third persons are concerned, until it is dissolved by a judicial proceeding on behalf of the Government that created it.

THIS case was brought up by writ of error from the Circuit Court of the United States for the district of Maryland.

The facts of the case are stated in the opinion of the court.

It was argued by *Mr. Davis* and *Mr. Shackelford* for the plaintiffs in error, and by *Mr. Price* and *Mr. Pearre* for the defendants.

The question being on the construction of a local charter, the arguments are not likely to be of general interest, and are therefore omitted.

Mr. Justice NELSON delivered the opinion of the court.

This is a writ of error to the Circuit Court of the United States for the district of Maryland.

.The action in the court below was an ejectment brought by the heirs of Isaiah Frost, to recover the possession of a tract of land situate in the county of Allegany, Maryland. The defence set up was a conveyance of the land by their ancestor to the defendants. The only question in the case is, whether or not the Frostburg Coal Company was capable of taking and holding real estate at the date of the deed, the 13th March, 1845.

The court charged the jury, if they found that Mechack Frost, Isaiah Frost, Thomas J. McKaig, and William W. Mc-Kaig, the parties named in the act of incorporation of 1845, accepted the charter, and proceeded to act as a corporate body under it, by the name of the Frostburg Coal Company, opened their coal mines, transported the coal to market, borrowed money on the credit of the company, and made large and costly improvements on the lands in controversy, during all which time Isaiah Frost, the ancestor, acted as one of the directors; and further found, that the said Frost executed and delivered to the company the deed of the 13th March, 1845, given in evidence, they must find a verdict for the defendants.-

·· The act of incorporation, which was passed February 24, 1845, provided that Mechack Frost, Isaiah Frost, Thomas J. McKaig, and William W. McKaig, and such other persons as may be associated with them in the manner afterwards provided, *shall be and they are hereby incorporated and made a body politic and corporate, by the name of the Frostburg Coal Company,* and by that name shall have succession, &c., conferring the usual corporate powers for the manufacture of iron, and mining of coal, and for transporting the same to market; and among others, the power to purchase and hold all such property, real, personal, and mixed, as the company may require for the purposes aforesaid.

The second section provided, that the capital stock of the company should consist of five thousand shares of one hundred dollars each, of which the lands and mines of Mechack Frost, Isaiah Frost, Thomas J. McKaig, and William W. McKaig, on one part, and those who may associate with them

and constitute the aforesaid subscription for stock, payable in money, on the other part.

The third section provided, that the subscriptions to the capital stock should be made at such places, and in such manner, as should be designated by the four persons above named, and that the shareholders of one or more shares of stock should be members of the corporation, and entitled to one vote for each share so held; and making the shares assignable and transferable, as may be provided in the by-laws of the company.

The fourth section provided, that the affairs of the company should be managed by a president and four directors, to be chosen by the stockholders, to serve one year, and till others shall be elected; and *until the first election of directors shall be held, the said Mechack Frost, Isaiah Frost, Thomas J. McKaig, and William W. McKaig, shall have full power and authority to exercise all the corporate powers of the said company, &c.*

The fifth section provided, that a general meeting of the stockholders should be held as soon as the company is organized, and annually thereafter, on the first Monday of June in each year, for the election of directors, and to consult upon the business of the company.

On the 12th March, 1845, the associates met in pursuance of the authority given in the third section of the act, at which meeting the whole number of shares, constituting the capital stock, were subscribed, and the company proceeded to the election of the president and four directors, the number required by the charter for the ensuing year; and at the same time, directed that the secretary should procure deeds to the company for the lands, which should constitute part of the capital stock. And on the 21st of the month, the board met, and provided for the issuing of certificates of the capital stock to each stockholder.

It was in pursuance of the resolution of the 12th March, that the deed of Isaiah Frost, the ancestor of the lessors of the plaintiff, was executed. This deed contained some four hundred and sixty-four acres of land, which, together with several parcels conveyed by Mechack Frost, another of the stockhold-

ers, dated on the same day, and adjoining the former tract, embraced the coal mines of the company, for the working of which it was incorporated.

The company immediately commenced preparations for opening the mines, and for transporting the coal to market, by constructing rail and tram roads leading into the mines, erecting buildings for the accommodation of the workmen, together with other necessary improvements, at an expense of some fifteen thousand dollars; also, a large amount of coal had been taken out of the mines, and sent to the market; all of which was done during the lifetime of Isaiah Frost, and while he was one of the most active and efficient directors, and all or nearly all of said fixtures and improvements had been made upon the parcel of land in question, and for which he had received stock. He was the largest stockholder but one in the company, and had dealt in the stock, by pledging it for money borrowed.

As we have already said, the main ground relied upon, on behalf of the heirs, to avoid the deed to the defendants, is the failure to organize under the charter, so as to constitute them a corporation capable of taking and holding real estate. It is supposed that there are some conditions precedent to the existence of the corporation which have not been performed, and that the act, of its own force, did not constitute them a corporate body. But a slight reference to the charter will show that the position is a mistaken one. The first section declares, that the four persons, and such others as may be associated with them, shall be and are hereby incorporated and made a body politic and corporate, by the name of the Frostburg Coal Company; and then confers upon it the usual powers belonging to a corporation, and among others, to purchase and hold real estate for the purposes of the company; and in the fourth section declares, that until the first election of directors shall be held, the four persons named shall have full power and authority to exercise all the corporate powers of the company. The charter took effect immediately on its acceptance by the persons named, and the subsequent steps, such as the subscription of the stock, procurement of the coal

lands,.election of the directors, of the president and secretary, passing by-laws, &c., were steps taken in perfecting the organization, and enabling it to use the powers and privileges conferred for the purposes for which they were granted.

It was supposed in the argument, that the words, "and such other persons as may be associated," &c., in connection with the four persons named in the first section, imported that other persons must be associated with the four, before the charter could take effect; but, if any doubt could be raised upon the language of the first section, the fourth removes it, as there the power and authority to exercise all the corporate powers of the company is expressly conferred upon the four persons, until the first election of directors. These corporate powers are not only conferred upon the four persons named, but are continued until their successors are appointed to take their places. The true meaning of the words referred to in the first section probably is, that a privilege was intended to be given to the company of uniting other associates with the four in the enterprise, if they so elected,

The same observation is also applicable to the second section, which declares that the capital stock shall consist of 5,000 shares of one hundred dollars each, of which the lands of the four persons named in the first section may be one part, and those who may associate with them, and constitute the corporation by subscription for stock, payable in money, the other. The charter does not provide that any given amount or portion of the stock shall be in land, or in money, and the true construction probably is, that the whole of it may have been payable in money.

The language of the section would seem to confer upon the four persons the privilege of paying their shares of stock by the conveyance of land, rather than imposing it upon them as an obligation. This is the construction of the charter under which the company has acted, as the subscription for the shares is a moneyed subscription. The land was purchased from two of the principal subscribers, by the company, at a valuation which was applicable to their subscriptions. They

would be liable to the company for the balance of their stock, as would the other subscribers for the whole amount of theirs.

The subscription of the stock was in form for a given number of shares; but as each share was fixed by the charter at one hundred dollars, the amount each was liable for to the company was readily ascertained, and it is well settled that a subscription in this form is as obligatory as if it had been in money. (14 Wend. R., 20.)

The ninth section of the charter provides, that the corporation shall be subject to all the restrictions imposed by the general act of 1838, regulating incorporations for manufacturing and mining companies. The 15th section of this act provides, that when over four-fifths of the capital stock of the company to which the act applies shall become concentrated, by purchase or otherwise, in the hands of less than five persons, &c., all the corporate powers and privileges granted shall cease and determine. And it is insisted, that the stock of this company, at the time of its organization, was held in violation of this section of the general act. Although the ninth section of the charter subjected the company to the general act, yet the provision is to be construed as subject only, when not inconsistent with the express provisions of the charter; and in this view, the better opinion, we think, is, that this four-fifths provision does not apply. But whether it does or not, it is unimportant to determine; for conceding that it does, a private party cannot take advantage of the forfeiture. That is a question for the sovereign power, which may waive it, or enforce it, at its pleasure. (9 Wend., 382; 4 Denio, 397.)

Without pursuing the case further, the main ground upon which we intend to place the judgment of the court is, that the defendants were made a corporation by the charter, the persons named in it constituting the corporate body, clothed with the powers and privileges conferred upon it, and were capable of taking and holding real estate; and second, even if it were otherwise, and some irregularities occurred in the organization of the company, inasmuch as no act made a condition precedent to the existence of the corporation has been omitted, or its non-performance shown, a party dealing with

the company is not permitted to set up the irregularity. The courts are bound to regard it as a corporation, so far as third persons are concerned, until it is dissolved by a judicial proceeding on behalf of the government that created it. Angel and Ames, sec. 774, and cases referred to.

Judgment affirmed.