# Richmond.

99 65
e101 811

## Coalter, Receiver, v. Bargamin and Others.

### January 17, 1901.

1. Corporation—*Circuit Court Charters—Minimum Capital—Partners.*— When a charter has been granted by a circuit court, pursuant to section 1145 of the Code, and lodged with the Secretary of the Commonwealth for recordation (the tax thereon having been paid when a tax is required), the corporation so chartered has a legal existence, and may sue and be sued as a corporation. In the absence of any provision in the order granting the charter requiring the minimum capital to be subscribed, the stockholders are not liable as partners, although the minimum capital has not been subscribed. The subscription of the minimum capital is not a condition precedent to the existence of the corporation.

Error to a judgment of the Law and Equity Court of the city of Richmond, rendered October 12, 1899, in an action of *assumpsit*, wherein the plaintiff in error was the plaintiff, and the defendants in error were the defendants.

*Affirmed.*

The opinion states the case.

*Smith, Moncure & Gordon,* for the plaintiff in error.

*R. Carter Scott* and *Bev. T. Crump,* for the defendants in error.

Buchanan, J., delivered the opinion of the court.

This is an action of *assumpsit* brought by the plaintiff in error against C. Y. Bargamin and sixteen other persons, as partners

doing business under the firm name and style of the Virginia Abstract Company.

The defendants filed several pleas, among them a plea denying they were partners as averred in the declaration.

It appears that, in November, 1894, five of the defendants, under the provisions of section 1145 of the Code, obtained a charter from the Circuit Court for the city of Richmond, creating them, and their successors, and such other persons as might be associated with them, a body politic and corporate, by the name of the Virginia Abstract Company, and that the same was lodged with the Secretary of the Commonwealth, as required by section 1146 of the Code.

Immediately after the charter was granted, the Abstract Company engaged in the business for which it was incorporated, and continued to carry it on until the institution of this action, in April, 1899. During that period, the company contracted the plaintiff's debt, and made the negotiable note sued on.

The ground upon which it is sought to hold the defendants liable for the company's debt is that where persons, who have attempted to form a corporation, have failed to comply with all the conditions necessary to the existence of the corporation, they become liable as partners for the engagement of the association.

It is insisted that one of the conditions precedent to the existence of the Abstract Company as a corporation was the subscription of at least $10,000 to its capital stock, that being the minimum amount fixed by its charter, and, as only $7,500 of that sum were ever subscribed, its charter never became effective.

Whether or not this contention is valid must be determined by the provisions of the Code under which the charter was obtained.

Section 1145 of the Code (the amendments thereto do not affect this case) provides that any five or more persons who shall desire to form a joint stock company for the conduct of any

enterprise or business which may be lawfully conducted by an individual or by a body politic or corporate (with some exceptions not material to this case), may make, sign and acknowledge before certain designated officers, a certificate in writing, setting forth the name of the company, the purpose for which it is formed, the capital stock and its division into shares, the amount of real estate proposed to be held by it, the place at which its principal office is to be kept, the chief business to be transacted, and the names and residences of the officers who, for the first year, are to manage its affairs; that this certificate may be presented to the circuit court of the county, or the circuit or corporation court of the corporation in which the principal office is to be located, or to the judge thereof in vacation; that the court, or judge in vacation, shall have discretion to grant or refuse to said person a charter of incorporation upon the terms set forth in the certificate, or grant it upon such other terms as may be adjudged reasonable; that if the charter be granted it shall be recorded by the clerk of said court in a book provided and kept for that purpose, and shall be certified to the Secretary of the Commonwealth, to be in like manner recorded in his office. This section requires that the amount of the capital stock of the company shall be stated in the certificate presented to the court, and section 1148 of the Code provides that the minimum capital of every such company (with some exceptions not material here) shall not be less than $500, and that the maximum capital shall not exceed twenty times the mimimum, and also provides how stock subscriptions shall be called for and paid. But there is no provision in the statute, nor in the order of the court granting the charter, requiring that the capital stock shall be subscribed before a joint stock company thus chartered shall have a corporate existence. On the contrary, section 1146 of the Code provides that, as soon as the charter granted by the court has been lodged in the office of the Secretary of the Commonwealth, the persons who signed and acknowledged the cer-

tificate, and their successors, and such other persons as they may associate with them according to the provisions of their charter, shall be a body politic and corporate by the name set forth in the certificate, with all the general powers, and subject to all the general restrictions, provided by law previously or subsequently made.

It is difficult to see how, under the plain and unambiguous language of the statute, it could be held that the subscription of the capital stock of the company is a condition precedent to its corporate existence. The statute does not say or imply, as is argued, that when the charter is lodged in the office of the Secretary of the Commonwealth, the incorporators named in the charter may do what is necessary to perfect the organization of the company, and that when these things are done, it shall have a legal existence, but it declares that as soon as the charter has been lodged in the office of the Secretary of the Commonwealth, the incorporators, their successors and associates, shall be a body politic and corporate, by the name set forth in the certificate, with all the general powers, and subject to all the general restrictions, provided by law previously or subsequently passed.

Certain language in the opinion of the court in the case of *West End Land Co.* v. *Claiborne,* 97 Va. 734, 749, is relied on to sustain the plaintiff's contention. The question there was between the company and a subscriber to its stock. One of his defences was that he had subscribed to the stock of the company upon condition that there should be *bona fide* subscriptions to the amount of the minimum capital fixed by its charter, and that this condition had not been complied with. When the language relied on is considered in the light of the issues and facts of the case, as all opinions must be, it cannot be regarded as deciding the question here involved.

The time when persons who obtained a charter from a court became a body politic and corporate was somewhat considered in

the case of *Martin* v. *South Salem Land Co.*, 94 Va. 28, 41-2.
The question in controversy in that case was between the cred-
itors and the stockholders of the company as such, and it appeared
that the minimum capital stock had been subscribed, so that the
question here involved did not arise in that case, and what was
said may not have been necessary to its decision, still we see no
reason to change the opinion there expressed. In that case it
was said, among other things, that when a company is chartered
by the Legislature "the subscription of the minimum amount
of stock required, and a meeting of the stockholders, are made
conditions precedent to its corporate existence." *   *   *   *
But " when a charter has been granted by a circuit court, pur-
suant to section 1145 of the Code, and lodged with the Secretary
of the Commonwealth for recordation (the tax thereon having
been paid where a tax is imposed) the corporation so chartered
has a legal existence so far, at least, that neither it nor its stock-
holders will be permitted to question it in a controversy with its
creditors. To hold otherwise would be to disregard the plain
language of section 1146 of the Code."

Professor Minor, in his lectures on private corporations, places
the same construction upon our statute that we have given it.
" If," he says, " the particular charter was *applied* for, its
acceptance is presumed. And so if the charter itself declares the
corporation to be a *corporate body*, as where it incorporates
certain named persons and such others as may be asssociated
with them. (Ang. & A. Corp. (10th ed.), sec. 83; *Frost* v.
*Frostburg Coal Co.*, 24 How. 278.) Hence in charters granted
by the circuit court or corporation court, upon application, the
applicants constitute a corporation as soon as the certified copy is
delivered to the Secretary of State  *   *   *   Code 1887, sec.
1146." 1 Minor's Inst. (4th ed.), 571.

Our statute differs from the statutes of most of the States,
some of which declare that the persons who shall subscribe to
the stock in the manner provided shall and are declared to be a

body politic and corporate when so much stock has been subscribed. Then it is held that there is no corporate existence until the stock is subscribed. Frequently the corporation is prohibited from going into operation until a certain amount of stock has been actually paid.

In the few States which have statutes similar to ours, the same construction that we have given to our statute has generally been placed upon them.

In *Hammond* v. *Straus*, 53 Md. 11, it was said: "As we have seen, the act, by its terms, constituted and declared the corporators therein named a body corporate; and upon their acceptance of the act, if it was accepted, the corporation was brought into existence without anything more, by force of the statute itself. There was no condition precedent prescribed to the mere existence of the corporation, after the acceptance of the charter; and in such case, it has been often decided, not only that the corporation is *in esse*, but that it may incur liabilities to third parties with whom it may deal, notwithstanding the omission or failure on the part of the corporators to observe and fulfil the requirements of the charter in order to perfect the organization. *Frost* v. *Frostburg Coal Co.*, 24 How. 278; *Franklin Fire Ins. Co.* v. *Hart*, 31 Md. 59; *New Central Coal Co.* v. *George's Creek Coal & Iron Co.*, 37 Md. 537, 555; *Narragansett Bank* v. *Atlantic Silk Co.*, 3 Metc. 282. If a legislative charter of incorporation requires certain acts to be done before the corporation can come into existence, those acts must appear to have been done before a corporation can be considered *in esse;* but this rule has no application to corporations expressly declared such by the act of incorporation, upon the mere acceptance by the corporators, as in the case under consideration. *Fire Department* v. *Kip*, 10 Wend. 266; Ang. & Am. on Corp., sec. 83."

In *National Bank* v. *Texas Investment Co.*, 74 Tex. 421, 435, it was insisted that the company was never legally incorporated, because the capital stock had not been subscribed and paid for.

But the court said: "We find no provision in the law making the existence of the corporation dependent upon the subscription to its stock, or the payment therefor. On the contrary, it is expressly provided that the existence of the corporation shall date from the filing of the charter in the office of the Secretary of State. Rev. Stats., Art. 570. It follows, we think, that when the company filed its articles of incorporation with Secretary of State it became a corporation in law, and the owners and managers of its business cannot be held liable as partners for debts contracted by it." Seè *First Nat. Bank* v. *Almy*, 117 Mass. 476; *Thornton* v. *Balcom*, 85 Iowa, 198; *Singer Mfg. Co.* v. *Peck*, 9 S. Dak. 29.

We fully agree with the learned counsel of the plaintiff that no body of persons should have a corporate existence until the minimum amount of the company's capital has been subscribed, but that is a question of policy which the legislature, not the courts, must determine. We can only administer the law as it is writttten.

We are of opinion that the plaintiff has no cause of action against the defendants as partners, and that the Law and Equity Court did not err in so holding. Whether he has a cause of action against them, or any of them, as officers or directors, or otherwise, except as partners, we express no opinion, as that question is not involved in this case.

The judgment complained of must be affirmed.

*Affirmed.*