FREESTATE LAND CORPORATION ET AL. *v.* MARTIN
V. B. BOSTETTER, JR. and GLADYS VIRGINIA
TAYLOR, Executors of the Estate of
Martin V. B. Bostetter, Sr.

[No. 39, September Term, 1981.]

*Decided January 28, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Donald E. Beachley* and *Kent N. Oliver,* with whom were *Miller, Miller & Oliver* and *Richard W. Lauricella* on the brief, for appellants.

*Kenneth J. Mackley,* with whom were *Mackley, Gilbert & Marks* on the brief, for appellees.

SMITH, J., delivered the opinion of the Court.

We shall here hold that the Court of Special Appeals was right for the wrong reason in *Bostetter v. Freestate Land*

*Corp.,* 48 Md. App. 142, 426 A.2d 404 (1981). Hence, we shall hold, as did it, that a trial judge erred in his determination that Julian L. Oliver and Irene Burris were the owners of stock in Freestate Land Corp. Accordingly, we shall modify and, as modified, affirm the judgment of the Court of Special Appeals. We specifically disapprove of the basis for its decision. It was of the view that this result was dictated by what it perceived as a failure of proof of an organizational meeting of that corporation.

We shall first set forth the dramatis personae in an effort to clarify somewhat the confusing facts here. Then we shall discuss the litigation in the circuit court and the issue addressed by the Court of Special Appeals. After that we shall provide a synopsis of the evidence adduced. Our discussion of the law will then follow.

### i Dramatis personae

Martin V. B. Bostetter — a Washington County attorney who apparently is responsible for the imbroglio now before the Court. He died in 1968.

Martin V. B. Bostetter, Jr. — son of Bostetter, one of his executors, and a member of the Maryland and Virginia Bars. He practices in Alexandria where he apparently is a federal bankruptcy judge. It was he who prepared the articles of incorporation for Freestate Land Corp.

Freestate Land Corp. — a Maryland corporation. It apparently was set up by Bostetter to take title to a farm Bostetter was selling as assignee of a mortgage. Bostetter desired the farm because it was adjacent to his home farm.

Julian L. Oliver (Oliver) — a friend of Bostetter for many years who maintained an office in the same building as Bostetter. According to Oliver, they "were associated in many business transactions. [Bostetter] was [Oliver's] personal attorney and friend." Oliver was in the real estate business.

Irene R. Burris — Bostetter's longtime secretary who ultimately became an officer and director of Freestate.

James C. Rice — Bostetter, Jr.'s law partner and half brother who was one of the incorporators of Freestate.

Edward S. Routon — Oliver's now deceased brother-in-law who resided in Arlington, Virginia, was one of the incorporators of Freestate, and was procured by Oliver to bid in the farm which Bostetter was selling.

ii Summary of facts producing this controversy

We believe the chancellor was absolutely correct when he said in this case:

"This is certainly a most confused state of facts. The Court believes and finds that the circumstances under which this undertaking got started were strange in that it is clear and all parties seem to agree that Mr. Bostetter, Sr. was in fact the Assignee for foreclosure on the mortgage which he in fact was the purchaser of and that he was the Freestate Corporation and that he directed all these things to take place and much of what took place, funds that changed hands or were transferred, were done from a trust account which is certainly highly irregular if not even more suspect, and Mr. Bostetter by his own conduct apparently was so lax in handling the corporation, because I suspect that he didn't plan on dying anytime soon, because if he had, no one would leave things in such a deliberate bad shape for his heirs, but through either deliberate neglect or benign neglect or whatever there is certainly tremendous neglect to the corporation. Somebody earlier today said that this was a case in which one could chase his own tail around and around and I would have to concur because when you try to have to determine what came first, the chicken or the egg."

In 1965, a mortgage was assigned to Bostetter for the purpose of foreclosure and collection. As such assignee, he sold approximately 102 acres of land at public sale for a stated consideration of $36,350. The tract's place of beginning, as called for in the deed, was "a large marked walnut tree, a corner of lands of Martin V. B. Bostetter and

the beginning of a Deed from Jacob Bostetter and wife to John Seibert bearing date the 6th day of April, A.D. 1829." The reported purchaser was Freestate Land Corp., a Maryland corporation.

The incorporators of Freestate were James C. Rice, Edward S. Routon, and Betty L. Mattos. Pursuant to the articles of incorporation, they were to be the original directors and to serve "until the first annual meeting, or until their successors [were] duly chosen and qualified . . . ." No minutes of an organizational meeting of the corporation have been found. Oliver says Bostetter told him that he, Oliver, was president and that Bostetter procured Oliver's signature as president on a note of Freestate to Bostetter dated June 4, 1965, in the amount of $32,715. Rents from the farm were collected and deposited in Bostetter's trust account. Bostetter drew a check on that trust account to Freestate in July 1968 for the net sum in that account which belonged to Freestate. He delivered the records of Freestate to Oliver almost immediately thereafter. The check was deposited in an account at Hagerstown Trust Company in the name of the corporation. As directors of Freestate, Oliver and Burris passed a resolution to set up that account. So far as the record discloses, Freestate never issued stock until sometime after Bostetter's death when stock was issued to Oliver and Burris for the amount of money they then contributed.

Bostetter, Jr., purported, after his father's death, to have an organizational meeting of the corporation. He procured a conveyance of the land in question from the corporation to him individually.

### iii The litigation

Subsequent to Bostetter's death, his personal representatives entered suit against the corporation on the note to which we have referred. Judgment in favor of the estate against the corporation was entered by confession. That litigation is not before the Court in this case and is relevant only on any issue of estoppel.

On September 30, 1971, Bostetter, Jr., and his co-executor sued Freestate and Oliver in the Circuit Court for Washington County. The bill of complaint, as ultimately amended, named Burris and Kent N. Oliver in addition to Freestate and Julian L. Oliver as parties defendant.

The bill sought a determination that actions of Oliver and Burris pertaining to the corporation were illegal. It prayed that they might be required to turn over to Bostetter's personal representatives all books and records of the corporation and that the defendants might be required to account for all monies received. Among other things, it alleged that among the assets of Bostetter's estate was "the entire or sole interest as a stockholder" in Freestate. It was claimed that no organizational meeting of Freestate ever had been held, although it was acknowledged that the records of the Department of Assessments and Taxation reflected the identity of officers and directors of the corporation.

At the conclusion of the case of Bostetter, Jr., et al., the chancellor granted the motion to dismiss of Oliver et al., saying:

"I must say that it is certainly a confusing situation and I think that to some degree the difficulty that has encountered as of today in dealing with this case is that everybody seems to be thoroughly familiar with the facts, but the facts in this Court's opinion cannot square with the relief that is requested in the Amended Petition. In reading the Amended Petition the Court reads that the Petitioners are requesting that this Court pass an order declaring the alleged conduct of Julian L. Oliver and Irene Burris null and void. But this Court does not have before it at this time in this record any evidence of any conduct of them other than some very general statements made by Mr. Bostetter Jr. that at some point in time he became aware of who was running the corporation. But this Court does not find that that type of evidence is specific enough or sufficient enough to square with the allegations in the Amended Petition. And there is further a request that Oliver and Burris turn over all papers, books, instruments, checking accounts and records

of Freestate Land Corporation, and there has been no proof that one, any such documents exist, and two, that they are in the possession of Mr. Oliver or Miss Burris, and thirdly, there is a request for an accounting of monies received and distributed by him or her and apparently that's what Plaintiff's Exhibit 10 is, which was listed as Freestate Land Corporation, Deposits and Paid Out. So that from the standpoint of relief sought under the Petition, the Court finds that there is no evidence which has been produced in the record sufficient to grant the relief prayed, if you can call them first and second relief prayed, and the third request is moot because apparently the information has all been supplied. The Court will grant the Motion to Dismiss."

The trial judge signed an order to that effect. An appeal was entered by the plaintiff, Bostetter, Jr., et al.

On January 21, 1976, Freestate Land Corp., Oliver, and Burris sued Bostetter, Jr., individually and as trustee and executor under the will of his father, Joanne R. Bostetter, and James C. Rice.[1] That bill prayed damages; a permanent injunction restraining Bostetter, Jr., et al. "from acting or attempting to act in the name of the Corporation as either directors, stockholders or officers"; that the deed from Freestate to Bostetter, Jr., be declared a nullity; that Bostetter, Jr., be directed to reconvey the property to Freestate, and for an accounting. The bill purported to contain *counts* concerned with fraud, fraudulent conveyances, etc.[2] That lengthy bill contained a number of averments including ones relative to the setting up of the corporation, the execution of the note by Oliver on behalf of the corporation to Bostetter, and the like. These included that Bostetter

---

1. No explanation has been provided for the obvious delays in this litigation.

2. We point out that in *Randolph Hills v. Shoreham,* 266 Md. 182, 185 n. 4, 292 A.2d 662 (1972), Judge Singley said for the Court, "[T]here is neither warrant nor precedent for joining several counts in a bill in equity, *see* Maryland Rule 370 a." Judge Digges made a similar statement for the Court in *Shoreham v. Randolph Hills,* 269 Md. 291, 294 n. 4, 305 A.2d 465 (1973), citing *Randolph Hills. Accord, Lewis v. Lewis,* 290 Md. 175, 182 n. 2, 428 A.2d 454 (1981), where, after referring to *Randolph Hills* and *Shoreham,* we said, "Of course, there may be multiple claims in equity notwithstanding the fact that one does not have counts."

approached Oliver "and stated that he was being investigated by the Internal Revenue Service; that he wished to divest himself of all ownership of the Corporation and that he wished to divest himself of any control over the Corporation." It claimed that although Oliver had no idea of the value of Freestate or whether it was solvent "he accepted ownership of the Corporation" because of "his friendship and business relationship" with Bostetter. The bill further alleged that "Bostetter, Sr. stated that he desired for his secretary, Plaintiff Irene Burris to share in the Corporation and the Plaintiff, Julian L. Oliver, Sr. considers her to be a 50% owner of the said corporation."

This case was tried immediately after the first mentioned case. In fact, by stipulation all of the evidence in the first case ultimately was admitted in the second. The chancellor found Freestate to be a debtor of Bostetter's estate; that the transfer from Freestate to Bostetter, Jr., was a nullity and should be declared null and void; that Bostetter's estate was entitled to judgment against Freestate only "on its confessed judgment note," and that "the estate having received what it is entitled to and [the court] having found that the testimony of Mr. Bostetter, Jr. being that he holds the deed on behalf of the estate and the Court having declared that deed to be null and void," Bostetter's estate was "no longer an actual party to this controversy." Thus, the remaining parties to the action were Freestate, Oliver, Sr., Burris, Bostetter, Jr., and Rice. The court said the question became, "who owns Freestate . . . ?" It pointed out that nowhere in the proceedings in this case or the prior case had there been a request for a declaration relative to the ownership of Freestate. The court enjoined Freestate from transferring or encumbering the land in question until Freestate's legal ownership was established. It ordered that a further hearing be held wherein Freestate, Oliver, Burris, Bostetter, Jr., his wife, and Rice might "appear and present such evidence as they m[ight] have which would reflect upon their legal entitlement to the ownership of Freestate . . . ."

That hearing was held.

The chancellor concluded his opinion, intended to cover both cases, by stating:

> "This venture, the purchase of the farm, started off with a number of irregularities, all caused by Bostetter, Sr. The matter became increasingly complex because of things done or not done by Bostetter, Sr. It is this Court's opinion that when he relinquished physical control of Freestate's books and records and designated Burris a director, he was attempting to divest himself of any and all interest he had in Freestate and retained only the note of June 24, 1965. This Court finds the note is an asset of Bostetter, Sr.'s estate, but that Freestate, after August, 1968, was under the control of Oliver, Sr. and Burris, and they are its true owners. This Court believes that Bostetter, Jr., et al, stand in the shoes of Bostetter, Sr. and are in no better position than he would be if living. His reasons went with him when he died but his actions speak sufficiently clear."

Accordingly, the chancellor dismissed the suit by Bostetter, Jr., et al. against Freestate and Oliver, Sr.; enjoined Bostetter, Jr., his wife, Rice, and the personal representatives and trustees of Bostetter's estate from acting or attempting to act in the name of Freestate in any capacity; ordered Bostetter, Jr., to reconvey to Freestate the farm in question, and ordered Bostetter, Jr., to pay to Freestate a sum which represented the net proceeds from the land in question received by him since 1973. That, too, produced an appeal.

### iv The decision

We have already set forth some of the facts. Absolutely no evidence of a gift from Bostetter to Oliver or Burris was adduced, notwithstanding the statement made in the answer to one of the bills of complaint.

Oliver was asked, "How do you claim you became an officer and Director [of Freestate]?" He replied, "I was elected by the — at the organization of Freestate Land Corporation in

'65." The pleadings reflect that Oliver, Routon, and Rice were directors and officers.

The Court of Special Appeals rested its decision upon the fact no evidence indicated that any organizational meeting of the corporation had been held. From this it inferred the absence of any such meeting. This was the basis of its conclusion that the Bostetter estate is the owner of Freestate. The premise of this conclusion, however, will not withstand scrutiny under Maryland law or under the law generally. Maryland Code (1975) § 2-102(b), Corporations and Associations Article, provides that when the Department of Assessments and Taxation accepts articles of incorporation for record, the proposed corporation becomes a body corporate under the name therein specified and subject to the purposes, conditions and provisions as stated in the articles. It further provides that except in a proceeding by the State for forfeiture of the charter, "acceptance of the articles for record by the Department is conclusive evidence of the formation of the corporation." A similar provision appeared in Code (1957) Art. 23, § 131, the effective statute at the time of the incorporation of Freestate. A like statute appears to have been on the Maryland scene for many years prior to the 1951 revision of the corporation laws found in the 1957 Code. *See, e.g.,* Code (1939) Art. 23, §§ 5 and 6.[3]

Those practicing in the field are aware that instances have been known of closely held corporations where minutes of organizational meetings and by-laws adopted at such meetings cannot be found, being misplaced, lost, strayed, or stolen. This circumstance no doubt accounts for some of our holdings. *See, e.g.,* H. Brune, *Maryland Corporation Law and Practice* § 339, at 406 (rev. ed. 1953), citing *Long v. Baltimore & O.R.R.,* 155 Md. 265, 141 A. 504 (1928), and stating,

---

3. In *Moberly v. Herboldsheimer,* 276 Md. 211, 216-21, 345 A.2d 855 (1975), we traced the historical background relative to Maryland corporation laws, noting, among other things, the appointment of a commission to revise the corporation law. That commission was responsible for the enactments of 1908. Much of the impetus for these changes came from the Maryland State Bar Association. Prior to that enactment, it was claimed that the General Assembly was obliged to devote as much as one-fourth of its time to consideration of legislative charters for corporations.

"After the expiration of a long period of time a presumption of regularity attends corporate proceedings." At 407 Brune further states, citing *Frost's Lessee v. Frostburg Coal Co.,* 65 U.S. (24 How.) 278, 16 L. Ed. 637 (1860); *Bartlett v. Wilbur,* 53 Md. 485 (1880); *Laflin & Rand P. Co. v. Sinsheimer,* 46 Md. 315 (1877), and *Franz v. Teutonia Build. Asso.,* 24 Md. 259 (1866), "[T]here have been a number of cases in which those dealing with a reputed corporation as such have been denied the right to question its existence as a corporation." Brune also asserts:

> "Though ordinarily a vote of shareholders or directors is necessary to elect or appoint officers, it has been held that the appointment of an officer may be 'inferred.' Persons acting as officers are presumed to be such and rightfully in office in the absence of proof to the contrary." *Id.* § 231, at 230.

*Eckenrode v. Chem. Co. of Canton,* 55 Md. 51 (1880), is cited for the first proposition with a notation to "[s]ee also" *Eq. Gas Lt. Co. v. Balt. Coal Tar Co.,* 65 Md. 73, 3 A. 108 (1886).

Citing for its authority *Maltby v. Northwestern Va.R.R.,* 16 Md. 422 (1860), and *Hager's-T.T.R. Co. v. Creeger,* 5 H. & J. 122 (1820), 8 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 3737, at 9 (rev. ed. Wolf 1966), states, "The maxim that all things shall be presumed to have been rightly and correctly done, until the contrary is proved, extends to the organization proceedings, and hence the corporation will be presumed to have been duly organized where it proceeds to act as a corporation." *See also* 2 F. O'Neal, *Close Corporations* § 8.02 (2d ed. 1971), discussing the disregard of corporate ritual and the neglect of paper work by close corporations.

What we really have here is the question of who owns or who is entitled to own the stock of Freestate. There is no denial of the fact that Bostetter was the instigator of the organization of Freestate and the one who paid for its organization. At oral argument it was twice conceded that had he demanded a stock certificate he would have been entitled to receive it. It was further conceded that he made no gift of stock to Oliver and Burris, and gave them no right to receive

stock. There is no evidence or even a suggestion that Bostetter in any way sold such a right. There is no inconsistency between Bostetter's being a creditor of the corporation, taking a note for the entire amount he advanced for the purchase of the farm, and his being a stockholder of the corporation.

We come down to the fact that there is no proof here in any way that Bostetter either divested himself of the right to be a stockholder or divested himself of stock. In light of the concessions made, it follows that Bostetter's estate is the owner of the corporation and that stock should be issued accordingly.

> *Judgment of the Court of Special Appeals modified so as to reverse the judgment of the Circuit Court for Washington County and remand the case to that Court for passage of a decree consistent with the views expressed in this opinion and as so modified the judgment of the Court of Special Appeals affirmed; appellants to pay the costs.*