**CONNORS, FISCINA, SWARTZ & ZIMMERLY, Appellant,**

v.

**Thomas M. REES, et al., Appellees.**

**Dean SWARTZ, Appellant,**

v.

**CONNORS, FISCINA, SWARTZ & ZIMMERLY, Appellee.**

**Nos. 88–579, 88–790.**

District of Columbia Court of Appeals.

Argued March 20, 1991.
Decided Nov. 13, 1991.

---

Robert M. Adler, Bethesda, Md., for Connors, Fiscina, Swartz & Zimmerly, appellant in No. 88–579 and appellee in No. 88–790.

John Jude O'Donnell, Washington, D.C., for Thomas M. Rees, the Boccardo Law Firm, and Thomas M. Rees, P.C., appellees in No. 88–579.

Dean E. Swartz, pro se.

Before ROGERS, Chief Judge, FERREN, Associate Judge, and BELSON,* Senior Judge.

BELSON, Senior Judge:

■ This case arises out of the actions of a law firm's "managing partner" who took several clients with him when he left the law firm's employment. The firm, Connors, Fiscina, Swartz & Zimmerly ("CFSZ"), filed a complaint alleging that the attorney, Dean Swartz, tortiously interfered with contractual relations between the firm and its clients and defamed the firm and its partners through representations he made to the clients shortly before he left the firm. CFSZ appeals the finding

---

* Judge Belson was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on July 24, 1991.

of the trial judge, without jury, that the firm had failed to establish that Swartz's actions had wrongfully caused clients to execute substitution agreements with the firm Swartz was attempting to join, the Boccardo law firm, and to terminate their relationship with CFSZ.[1] Swartz cross-appeals, contending that the trial judge erroneously excluded evidence that would have established the truth of his statement that CFSZ was experiencing severe financial difficulties and, generally, that the trial judge erred in making findings regarding defamation which were not supported by the record.[2] We affirm.

## I.

In the summer of 1981, three persons who were both medical doctors and attorneys, Dr. Paul Connors, Dr. Salvatore Fiscina, and Dr. James Zimmerly asked attorney Dean Swartz to join with them in forming a "premier" plaintiff's medical malpractice firm to be called Connors, Fiscina, Swartz & Zimmerly (hereinafter "CFSZ"). Connors, Fiscina, and Zimmerly would work only part-time in the evenings and on weekends, continuing to work full-time at their government jobs. As partners, they would decide matters of policy. In addition, they would lend the necessary funds to support CFSZ until income could be realized from the conclusion of cases. Swartz would work full-time as an employee of CFSZ. Although he had no equity interest, he would have the title, "managing partner." He would not draw a salary but would be compensated from the collection of legal fees from cases that he referred to the firm and from cases on which he worked for the firm. The other associates hired by CFSZ had compensation arrangements similar to Swartz's.

By early 1982, conflicts had developed between Swartz and the three partners, Swartz becoming dissatisfied with the financial arrangement, and Connors, Fiscina, and Zimmerly growing dissatisfied with Swartz's handling of the cases. During this period, Swartz avoided several meetings with the partners. Finally, on April 24, 1982, Swartz met with Connors, Fiscina, and Zimmerly, but only to give them his letter of resignation and copies of termination agreements he had obtained from CFSZ clients.

Prior to his resignation, Swartz had contacted Thomas M. Rees, a partner with the Boccardo law firm, about joining that firm. Impressed with Swartz and the potential clients he proposed to bring with him, Rees informed Swartz that he had no authority to hire him, but intended to recommend him to James F. Boccardo, the senior partner of the firm. Rees further told Swartz that potential clients needed to execute a substitution agreement, designating the Boccardo law firm as their attorney. To assist Swartz with the drafting and execution of the substitution agreement, Rees sent him several Boccardo law firm brochures.

Armed with the form substitution agreements and termination agreements, Swartz

1. CFSZ also appeals the trial judge's ruling in favor of Thomas M. Rees which flowed from her ruling in favor of Swartz.

2. Swartz also contends that the trial judge erred in failing to reopen and increase his damages for the work he had performed for the Hemphill case based on the evidence that a partner of CFSZ, Dr. Zimmerly, collected $88,000 from that case. His post-trial request to the trial judge for such relief has not been made a part of the record. We therefore decline to consider this claim of error. *See Cobb v. Standard Drug Co.,* 453 A.2d 110, 111 (D.C.1982) (appellant's duty to place before appellate court the portions of the record needed to consider claims of error).

Swartz raises several other points on appeal as well, none of which we find meritorious.

Among them is the assertion that the trial court erred in awarding CFSZ punitive damages based, *inter alia,* on Swartz's statements to clients that CFSZ planned to sell their cases to a different firm; this argument fails because the court's subsidiary finding of malice in support of its finding of defamation also supported the award of punitive damages. Another is that CFSZ was not entitled to maintain a legal action because of misrepresentations made in connection with the firm's incorporation in Maryland. We reject this argument for the reasons relied on by the trial judge. *See Freestate Land Corp. v. Bostetter,* 292 Md. 570, 579–80, 440 A.2d 380, 385 (1982); *Cranson v. International Business Mach. Corp.,* 234 Md. 477, 485–86, 200 A.2d 33, 37 (1964).

proceeded to contact several clients whom he hoped to take with him to the Boccardo law firm. Between April 15, 1982, and April 21, 1982, Swartz met with Calvin W. Shives (April 15th), Irene P. Krueger (April 16th), Richard and Gladys Hemphill (April 16th), Alexandria Sloan (April 17th), and Loretta E. Washington (April 21st) either at their homes or their work to inform them that he was leaving CFSZ to join the Boccardo law firm. After providing each client with the Boccardo law firm brochure and emphasizing particular facts about the firm, Swartz informed each client of his or her options: to remain with CFSZ, to go with him to Boccardo, or to retain other counsel. Each client signed the termination agreement and substitution agreement at his or her meeting with Swartz.

Only the Hemphills expressed any doubts about signing the agreements.[3] In the course of the meeting in which Swartz first told the Hemphills that he was leaving the firm, he also told them that CFSZ planned to sell their case to a Wisconsin firm for $50,000 and that CFSZ lacked the financial resources to press the Hemphills' case. The Hemphills spoke with Swartz several times after the meeting, expressing their concerns about their representation. In a further effort to convince the Hemphills to go with him to the Boccardo law firm, Swartz wrote a letter to them repeating his earlier statements that CFSZ planned to have a Wisconsin law firm handle the case and stating that a possible conflict may have existed with the partners' medical practices. Swartz also informed the Hemphills that he had "bought" Mr. Hemphill's medical records from CFSZ. Having lost all confidence in both Swartz and CFSZ, the Hemphills decided to follow the earlier advice of their personal attorney that they retain Marvin Ellin, Esq., to represent them in their medical malpractice claim.

With respect to CFSZ's claim of tortious interference with contractual relations, the trial judge found at a bench trial that Swartz had "flatly and unequivocally misrepresented the status of his future employment and firm affiliation," that he had "knowingly and intentionally emphasized those facts about [the Boccardo] firm which would be particularly appealing to these particular clients," and that he "blatantly lied to the Hemphills and Ms. Krueger about the intention of [CFSZ] to 'auction off' or sell their cases to a Wisconsin law firm."[4] Nevertheless, the trial judge concluded that the evidence failed to establish that this conduct was "responsible for the severing of the contractual relationship" between the clients and CFSZ. Rather, the trial judge concluded, the cause of the clients' "flight" from CFSZ was "the fact that the lawyer with whom they had a close and satisfying professional relationship was leaving the firm, and the fact that they had no such relationship with any of the firm's other lawyers all of whom ... were *faceless strangers.*"[5] (Emphasis added.)

The trial judge concluded with respect to CFSZ's defamation claim that Swartz's statements to the Hemphills that CFSZ planned to sell their cases to a Wisconsin firm and that he had "bought" the Hemphills' medical records from CFSZ were defamatory *per se.* Finding that Swartz neither believed nor had any reasonable basis to believe these statements, the trial judge concluded that Swartz was not protected by a qualified privilege to make them. The trial court awarded CFSZ $2,500 in compensatory damages and $7,500 in punitive damages for defamation.

---

3. Krueger testified that her family and friends were concerned about her decision and that her cousin volunteered to check out the Boccardo law firm while he was in San Francisco on business. The information her cousin gave her about the Boccardo law firm, however, only reassured her that she had made the right decision to stay with Swartz.

4. The ethical questions raised by the trial judge's findings of fact are not before us in this proceeding.

5. The trial judge further concluded that CFSZ was not entitled to any relief on its complaint against Thomas M. Rees, whom it had also sued for tortious interference with contractual relations, because it was "essentially derivative" of the similar claim against Swartz.

## II.

 CFSZ contends that the trial judge erred in failing to find that Swartz's tortious conduct proximately caused CFSZ's clients to terminate their relationship with the firm.[6] They argue that the trial judge improperly applied the doctrine of proximate cause by failing to consider whether Swartz's conduct was a "substantial factor" in the clients' decisions to leave. To prevail on its claim, CFSZ had to prove that Swartz's intentional misrepresentations caused the clients to leave CFSZ. *See Tuxedo Contractors, Inc. v. Swindell–Dressler Co.,* 198 U.S.App.D.C. 426, 429, 613 F.2d 1159, 1162 (1979); *see also Technology for Energy Corp. v. Scandpower, A/S,* 880 F.2d 875, 877 (6th Cir.1989), *cert. denied,* 493 U.S. 1057, 110 S.Ct. 868, 107 L.Ed.2d 952 (1990). *See generally Dalo v. Kivitz,* 596 A.2d 35, 41 (D.C.1991) ("[p]roximate cause exists when there is a 'substantial and direct causal link' ").

The trial judge's thorough written opinion dealt explicitly with the issue of proximate cause:

> the misrepresentations about the Boccardo law firm, about the financial precariousness of Connors, Fiscina, and about the plan to "sell" their cases to the Wisconsin firm were of *no determinative weight* and *were not the cause, proximate or otherwise,* of their decision to terminate their retainer agreements with Connors, Fiscina.

(Emphasis added.) The trial judge later specified that by this language it meant "to make it clear that it was excluding the possibility that those misrepresentations were substantial or contributing or concurring causes of the breach."

 The trial court's conclusion that it was not Swartz's misconduct that caused CFSZ's clients to leave CFSZ is a finding of fact that will not be set aside unless clearly erroneous. *See District of Columbia v. Freeman,* 477 A.2d 713, 716 (D.C.1984) ("existence of proximate cause is a question of fact"); *Tuxedo Contractors, Inc., supra,* 198 U.S.App.D.C. at 429, 613 F.2d at 1162; D.C.Code § 17–305(a) (1989); *see also* W. KEETON, THE LAW OF TORTS, § 129, at 991 (5th ed. 1984). The trial court based its finding of no proximate cause on the unequivocal testimony of the clients that they had a close and satisfying professional relationship with Swartz, that they had no relationship with any other attorney at CFSZ, and, in some instances, that they would have followed Swartz anywhere.[7] Having reviewed the record and the trial judge's thorough findings of fact and conclusions of law, we cannot say that the trial judge's finding was clearly erroneous.[8]

## III.

 Swartz contends that the trial judge's finding of defamation with respect to his statements that CFSZ was suffering financial difficulties is flawed by the trial judge's improper exclusion of evidence. At trial, Swartz offered for admission into evidence, through the testimony of Dr. John Burroughs, several documents relating to the financial difficulties of CFSZ. The trial judge excluded the documents without permitting Swartz first to make a proffer, and apparently without examining them. This, Swartz asserts, was an abuse of discretion.

---

6. To recover for tortious interference with contractual relations, CFSZ had to prove: "(1) existence of a contract, (2) knowledge of the contract, (3) intentional procurement of its breach by the defendant, and (4) damages resulting from the breach." *Alfred A. Altimont, Inc. v. Chatelain, Samperton & Nolan,* 374 A.2d 284, 288 (D.C.1977); *see also Dunn v. Cox,* 163 A.2d 609, 611 (D.C.Mun.App.1960). The trial judge found that CFSZ had met its burden of proof with respect to the first two elements.

7. The finding with respect to the Hemphills was slightly different. As to them, the trial judge found no proximate cause based on the fact that no other attorney at CFSZ knew anything about their case, that they had been dissatisfied for some time at the slow pace with which their case was moving, and that their personal attorney had suggested that they retain Marvin Ellin, Esquire.

8. CFSZ also urges this court to follow the holding in *Meehan v. Shaughnessy,* 404 Mass. 419, 535 N.E.2d 1255 (Mass.1989), and shift the burden of proof of proximate cause to Swartz. Because CFSZ failed to make this argument to the trial court, we decline to entertain it on appeal.

*See Nolan v. Nolan,* 568 A.2d 479, 487–89 (D.C.1990); *see also Weiner v. Kneller,* 557 A.2d 1306, 1309–12 (D.C.1989); *see generally Johnson v. United States,* 398 A.2d 354, 364 (D.C.1979).

Even if we assume, however, that the exclusion of these documents was error, any error was harmless. *See Johnson, supra,* 398 A.2d at 366–67. Although the trial judge concluded that the statements Swartz made in the letter to the Hemphills about the financial stability of CFSZ were defamatory *per se,* she further found that under the circumstances, Swartz may have had a reasonable belief that this statement was true and thus, that he had a qualified privilege in making the statement. At most, the excluded documents would further support the trial judge's finding that Swartz may have had a reasonable belief in the truth of these statements, and her conclusion that these remarks were not "so excessive, intemperate, unreasonable, and abusive as to forbid any other reasonable conclusion than that defendant was actuated by express malice." *Ashford v. Evening Star Newspaper Co.,* 41 App.D.C. 395, 405 (1914). In any event, Swartz was not held liable for defamation based on statements that he made regarding CFSZ's financial stability. Finally, we are unpersuaded by Swartz's other challenges to the trial judge's rulings on defamation and find those rulings amply supported by the record.

*Affirmed.*