VILLANTI, Judge.
 

 William H. Winters appeals the final judgment entered against him in this action brought by Richard Mulholland after Winters left Mulholland’s law firm and took several clients with him.
 
 [1]
 
 Mulholland cross-appeals the remittitur of the jury’s verdict. We reverse the final judgment in favor of Mulholland and remand for entry of judgment in favor of Winters because Mulholland failed to prove the causation element of his civil theft claim. This resolution renders Winters’ other claims and Mulholland’s cross-appeal moot.
 

 The facts in this case are enough to make any legal ethics professor cringe. Taking the facts in the light most favorable to the jury’s verdict, the evidence at trial showed that after working as an associate at Mulholland’s law firm for over fifteen years, Winters decided to leave and strike out on his own. In the months leading up to his departure, Winters considered which of his assigned clients he wanted to try to take with him when he left the firm. During this time, Winters removed at least one client file from Mul-holland’s office and copied it before returning it. He kept other client files with him rather than leaving them at the office. Elizabeth Chapa, Winters’ paramour and a former Mulholland paralegal, hacked into Mulholland’s firm computer system and altered client contact data for some of the clients assigned to Winters to make it more difficult for Mulholland to contact these clients.
 
 [2]
 
 All of this was done at a time when Winters knew he was leaving the firm but had not yet told Mulholland of his plans.
 

 On Friday, June 22, 2001, Winters packed up certain client files and left for the weekend. On Monday, June 25, 2001, Winters did not return to work. Instead, he called Mulholland’s office manager and told him that a letter of resignation was on his desk. When Mulholland requested the return of the client files in Winters’ possession, Winters told Mulholland that he would have to sue him to get them. Winters also told Mulholland that he had told the departing clients that Mulholland was
 
 *56
 
 retiring and no one would be available to handle their cases. When Mulholland pointed out that this was untrue, Winters replied, “I know it, but they don’t.”
 

 Ultimately, twelve of Mulholland’s most lucrative clients left the firm with Winters. Mulholland subsequently brought an action for writ of replevin to recover his original client files. After the writ issued, Winters returned the client files that were in his possession; however, some documents were missing from some of the returned files. None of the twelve clients who left with Winters ever returned to Mulhol-land’s firm.
 

 Based on these actions, Mulholland brought a suit against Winters for civil RICO, federal RICO, civil theft, conversion, intentional interference with advantageous business relationships, accounting, and extinguishment of retaining liens. In these claims, Mulholland sought damages in an amount based on the attorney’s fees received by Winters from the settlement of the twelve clients’ cases. Discovery was prolonged and contentious, and the case ultimately went to trial in 2008.
 

 For reasons not apparent from the record, after the close of all evidence, Mulhol-land chose to submit only his civil theft claim to the jury. Winters’ motion for directed verdict on this claim was denied, and the jury ultimately found that Winters had committed civil theft. The jury awarded Mulholland $748,502.90 in damages and $130,500 in attorney’s fees. In response to various posttrial motions, the trial court remitted the damages award to $383,105 but then trebled it to $1,149,315 pursuant to the civil theft statute. The final judgment ultimately entered against Winters and in favor of Mulholland was $1,470,453.
 

 In this appeal, Winters raises three issues concerning the propriety of the judgment entered against him. Mulholland cross-appeals the remittitur of the jury’s verdict. We find merit only in Winters’ argument that Mulholland failed to prove that any of Winters’ actions were the proximate cause of any damages suffered by Mulholland. This decision renders the other issues raised on appeal and cross-appeal moot.
 

 The applicable civil theft statute, section 772.11, Florida Statutes (2001), provides, in pertinent part,
 

 Any person who proves by clear and convincing evidence that he or she has been injured in any fashion by reason of any violation of the provisions of ss. 812.012-812.037 has a cause of action for threefold the actual damages sustained and, in any such action, is entitled to minimum damages in the amount of $200, and reasonable attorney’s fees and court costs in the trial and appellate courts.
 

 Under section 812.014, Florida Statutes (2001), the only statutory section potentially applicable to Mulholland’s claims, a person “commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another[.]” Section 812.012(3) defines “obtains or uses” as any manner of:
 

 (a) Taking or exercising control over property.
 

 (b) Making any unauthorized use, disposition, or transfer of property.
 

 (c) Obtaining property by fraud, willful misrepresentation of a future act, or false promise.
 

 (d)l. Conduct previously known as stealing; larceny; purloining; abstracting; embezzlement; misapplication; misappropriation; conversion; or obtaining money or property by false pretenses, fraud, or deception; or
 

 
 *57
 
 2. Other conduct similar in nature.
 

 § 812.012(3).
 

 In this case, taking the evidence in the light most favorable to the jury’s verdict, the evidence showed that Winters copied at least one of Mulholland’s client files and retained several other paper files for a short period of time after he left Mulhol-land’s firm. When the files were returned, some documents were missing from some of the files. Winters’ paramour hacked into Mulholland’s computer system and altered certain information pertaining to some of Winters’ clients to make it harder for Mulholland to contact these clients. In addition, Winters told some of Mulhol-land’s clients that Mulholland was retiring and that no one would be available to handle their cases after Winters left.
 

 There is no real question that these activities constitute the unauthorized use of Mulholland’s client files, misappropriation, fraud, and deception. Thus, Mulhol-land did prove that a “theft” occurred. However, it is not enough for a plaintiff prosecuting a cause of action for
 
 civil
 
 theft to show only that a theft of his or her property occurred. Instead, section 772.11 also requires the plaintiff to prove by clear and convincing evidence that he or she was injured “by reason of any violation” of the listed theft statutes.
 
 See, e.g., Anthony Distribs., Inc. v. Miller Breiving Co.,
 
 941 F.Supp. 1567, 1576 (M.D.Fla.1996) (noting that the activities that constitute the “theft” under the statutory definitions must be the cause of the plaintiffs injuries and finding that it was not Miller’s improper actions but actually Anthony’s own marketing scheme that caused Anthony’s losses). Accordingly, to recover damages for civil theft, a plaintiff must prove causation, i.e., that the defendant’s actions that support a finding of theft were the proximate cause of the plaintiffs damages.
 

 In this case, however, Mulholland presented no evidence to prove that the theft was connected to the loss of his clients and thus was the cause of his damages. For example, Mulholland presented no evidence that any client chose to leave Mulholland and go with Winters because Winters had a copy of their file. While Winters may have made unauthorized use of Mulholland’s paper files, in the absence of some evidence that Mulholland was injured by Winters’ having taken and copied these files, the evidence is insufficient to support a judgment for civil theft.
 

 Similarly, while the alterations to the client information in the computer system may have affected Mulholland’s ability to contact his clients, no client testified that he or she left Mulholland and went with Winters because Mulholland never contacted them. Further, the alterations to the information in the computer did not, in and of themselves, deprive Mulholland of his client information because he testified that he had the written intake sheet in the client files, which contained this same information.
 

 Finally, Mulholland did not present any evidence to establish that any of the clients left because Winters told them that Mul-holland was retiring. In fact, the evidence presented was to the contrary. Mulhol-land’s former client Bruce Murakami testified that he left Mulholland’s firm and went with Winters because Mulholland was a name only — not the person who had been handling his case — and that he wanted to stay with the lawyer who had been personally handling his case. Mulholland did not call a single client to testify that he or she was told by Winters that Mulhol-land was retiring and that he or she would have stayed with Mulholland knowing otherwise. Thus, Mulholland presented no evidence to establish that Winters’ behavior supporting the finding of “theft,” loath
 
 *58
 
 some as it might have been, actually caused any of the clients to leave Mulhol-land, resulting in his loss of the right to the fees.
 

 The facts from an out-of-state case present a good contrast to the evidence presented by Mulholland. In
 
 Connors, Fiscina, Swartz & Zimmerly v. Rees,
 
 599 A.2d 47, 49 (D.C.1991), Swartz became dissatisfied with his position at his medical malpractice firm and decided to leave. While still with the Connors firm, he contacted another firm, the Boccardo firm, about going to work there.
 
 Id.
 
 Swartz promised the Boccardo firm that he would bring some of his clients with him.
 
 Id.
 
 Once an agreement was in place with Boccardo but before resigning from the Connors firm, Swartz contacted several of his current clients.
 
 Id.
 
 at 50. As the court described,
 

 Armed with the form substitution agreements and termination agreements, Swartz proceeded to contact several clients whom he hoped to take with him to the Boccardo law firm. Between April 15, 1982, and April 21, 1982, Swartz met with Calvin W. Shives (April 15th), Irene P. Krueger (April 16th), Richard and Gladys Hemphill (April 16th), Alexandria Sloan (April 17th), and Loretta E. Washington (April 21st) either at their homes or their work to inform them that he was leaving CFSZ to join the Boccardo law firm. After providing each client with the Boccardo law firm brochure and emphasizing particular facts about the firm, Swartz informed each client of his or her options: to remain with CFSZ, to go with him to Boccardo, or to retain other counsel. Each client signed the termination agreement and substitution agreement at his or her meeting with Swartz.
 

 Only the Hemphills expressed any doubts about signing the agreements. In the course of the meeting in which Swartz first told the Hemphills that he was leaving the firm, he also told them that CFSZ planned to sell their case to a Wisconsin firm for $50,000 and that CFSZ lacked the financial resources to press the Hemphills’ case. The Hemp-hills spoke with Swartz several times after the meeting, expressing their concerns about their representation. In a further effort to convince the Hemphills to go with him to the Boccardo law firm, Swartz wrote a letter to them repeating his earlier statements that CFSZ planned to have a Wisconsin law firm handle the case and stating that a possible conflict may have existed with the partners’ medical practices. Swartz also informed the Hemphills that he had “bought” Mr. Hemphill’s medical records from CFSZ. Having lost all confidence in both Swartz and CFSZ, the Hemphills decided to follow the earlier advice of their personal attorney that they retain Marvin Ellin, Esq., to represent them in their medical malpractice claim.
 

 Id.
 
 at 49-50 (footnote omitted).
 

 At the trial on the Connors’ firm’s tor-tious interference claim against Swartz, Swartz called the clients who left with him to testify.
 
 Id.
 
 at 51. Each client testified that “they had a close and satisfying professional relationship with Swartz, that they had no relationship with any other attorney at CFSZ, and ... that they would have followed Swartz anywhere.”
 
 Id.
 
 Based on this testimony, the trial court found that even though Swartz had blatantly lied to some of the clients, that conduct was not “ ‘responsible for the severing of the contractual relationship’ between the clients and CFSZ.”
 
 Id.
 
 at 50. Instead, the clients left because “the lawyer with whom they had a close and satisfying professional relationship was leaving the firm, and ... they had no such rela
 
 *59
 
 tionship with any of the firm’s other lawyers all of whom ... were
 
 faceless strangers.” Id.
 

 In contrast to Swartz, Mulholland in this case did not call any of his former clients to testify as to why they severed their contractual relationship with Mulholland’s firm. Mulholland established Winters’ bad actions. He also established that certain clients left his firm and went with Winters. But he failed to present any evidence that would even tend to show that Winters’ lies and misrepresentations caused the clients to leave the Mulholland firm.
 
 [3]
 
 This lack of evidence of proximate cause is fatal to Mulholland’s civil theft claim.
 

 As the plaintiff seeking damages, Mul-holland had the burden to present evidence to prove each of the elements of his statutory civil theft claim — one of which was causation. When Mulholland failed to present any evidence to prove this element, Winters was entitled to a directed verdict in his favor. The trial court could not allow the jury to speculate on causation, particularly because a claim for civil theft requires that the plaintiff prove his or her case by clear and convincing evidence.
 
 See
 
 § 772.11. Accordingly, we reverse the final judgment in favor of Mul-holland and remand for entry of a final judgment in favor of Winters.
 

 Reversed and remanded for entry of judgment in favor of Winters.
 

 CASANUEVA, C.J., and FULMER, CAROLYN K., Senior Judge, Concur.
 

 [1]
 

 . Mulholland also sued Marc E. Yonker, who left the Mulholland firm at about the same time as Winters and who ultimately teamed with Winters to form a new law firm. By the same verdict at issue in this appeal, the jury found in favor of Mulholland and against Yonker. After various posttrial proceedings, the trial court entered a judgment against Yonker, which Yonker has not appealed. He is named as an appellee in this case pursuant to Florida Rule of Appellate Procedure 9.020(g)(1).
 

 [2]
 

 . There was no evidence presented at trial to show that Winters asked Chapa to do this. However, there was some evidence that he was aware of what she had done and failed to take any steps to notify Mulholland or correct the information.
 

 [3]
 

 . At oral argument, counsel for Mulholland opined that Winters’ conduct was so repugnant and unprofessional that causation and damages should be presumed. Tempting as such a presumption might be under the circumstances of this case, we can find no precedent to support this proposition.